**Opinion filed April 20, 2017**



## In The

# Eleventh Court of Appeals

_____

## No. 11-14-00287-CR

_____

## STANLEY LUCIUS ATNIPP, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**

**Midland County, Texas**

**Trial Court Cause No. CR40673**

### O P I N I O N

The jury found Stanley Lucius Atnipp guilty of the offense of cruelty to a nonlivestock animal and assessed punishment at confinement for two years. *See* TEX. PENAL CODE ANN. § 42.092(b)(2) (West 2016). However, the jury recommended that the trial court suspend the imposition of the sentence and place Appellant on community supervision. The trial court agreed, suspended the

imposition of the sentence, and placed Appellant on community supervision for four years. Appellant asserts seventeen issues on appeal. We affirm.

## I. *The Charged Offense*

The grand jury indicted Appellant, in relevant part, for cruelty to a nonlivestock animal. A person commits the offense of cruelty to a nonlivestock animal when he "kills, administers poison to, or causes serious bodily injury to an animal" without the owner's effective consent. *Id.* This particular variation of the offense is a state jail felony, but it is punishable as a third-degree felony if a deadly weapon is used or exhibited during the commission of the offense. *See id.* § 42.092(c), § 12.35(c)(1) (West Supp. 2016).

## II. *Evidence at Trial*

Appellant walked out of his home one fall day to take his Chihuahua outside. There, he encountered three dogs—a boxer, a German shepherd, and a black Labrador retriever mix—that had escaped their owners' yard and were wandering the neighborhood. Lori Winter, a neighbor, had found the three dogs and was attempting to use her pickup to lead them back to their owners' yard. When the three dogs were approximately fifty feet from Appellant's home, they apparently noticed Appellant and his Chihuahua in Appellant's yard and "trotted" toward them. Winter parked her pickup and called the three dogs.

According to Winter, Appellant immediately picked up his Chihuahua and walked into his house. Appellant then came back outside and said to Winter, "I will shoot you and the dogs." Winter told Appellant that she was trying to help her neighbors get their three dogs back home. She then saw what she believed to be a pistol in Appellant's hand. Winter testified that Appellant pointed the pistol at her, which caused her to "[h]it the ground" behind a bush. She then heard one or two gunshots, saw the German shepherd and Labrador run away, and saw the boxer stumble into the street and die. Winter testified that the boxer had not acted

aggressively, barked, or snarled and that the boxer was approximately ten feet away from Appellant when Appellant shot the boxer.

Appellant testified on his own behalf that the boxer acted aggressively toward him and his dog and that he was concerned for the safety of his Chihuahua. Appellant told Winter, "Get your dogs out of my yard," to which she responded, "They're not my dogs." When the dogs had approached to within arm's reach of Appellant, he picked up his Chihuahua, went inside his home, and shut the door. Once inside, Appellant put his Chihuahua down. Then, he said, "[i]t dawn[ed] on [him that he has] got a lady out front," so he grabbed his shotgun from next to the door and went back outside. At that time, he could only see the boxer and the German shepherd. Appellant claimed that the dogs moved toward him, so he fired at the boxer and tried to hit its back legs to scare it away but not to kill it. The boxer was twenty to thirty feet away from Appellant when he fired the shotgun; Appellant admitted that the boxer died from the gunshot wound.

### III. *Issues Presented*

In his first of seventeen issues, Appellant asserts that the trial court erred when it denied his motion for instructed verdict because the State failed to meet its burden of proof to disprove the depredation exception. In Issues Two through Five, Appellant asserts that the trial court erred when it denied his request for jury instructions on necessity, depredation, property, and personal property, respectively. In his sixth issue, Appellant asserts that the trial court erred when it instructed the jury, over his objection, that depredation control did not apply to his case. In Issues Seven and Eight, Appellant asserts that the trial court erred when it permitted the State to impeach a witness with a specific instance of misconduct in violation of Rules 401 and 608(b) of the Texas Rules of Evidence. In Issues Nine through Sixteen, Appellant asserts that the trial court erred when it admitted evidence of various extraneous offenses under exceptions to Rules 404(b) and 403 of the Texas

Rules of Evidence. In his seventeenth issue, Appellant asserts that the trial court erred when it failed to submit instructions to the jury to restrict the jury's consideration of extraneous offenses.

## IV. *Analysis of Issues One through Six*

### A. *Issue One: The State adduced sufficient evidence that the depredation exception did not apply in this case.*

Appellant challenges the trial court's denial of his motion for directed verdict. He contends that the State adduced insufficient evidence to prove beyond a reasonable doubt that he was not engaged in wildlife or depredation control, an exception to the application of Section 42.092. PENAL § 42.092(f)(1)(B). As we explain below, we disagree with Appellant because the State adduced sufficient evidence that he was not engaged in wildlife depredation control.

### 1. Standard of Review

We review a challenge to the trial court's denial of a motion for an instructed verdict under a sufficiency analysis. *See Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990) ("A challenge to the trial judge's ruling on a motion for an instructed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction."). We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*. *See Jackson v. Virginia*, 443 U.S. 307 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When, as here, the statute contains an exception to the offense, the State must "prove beyond a

4

reasonable doubt that the defendant or defendant's conduct does not fall within the exception." PENAL § 2.02(b) (West 2011).

In our review, we must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The jury is free to draw reasonable inferences from basic facts to ultimate ones. *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). Further, the factfinder is the sole judge of the weight and credibility of the evidence; we may not reevaluate the weight and credibility of the evidence so as to substitute our own judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We also measure the sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

### 2. Depredation Control

It is an exception to the application of Section 42.092 that the conduct engaged in is a generally accepted and otherwise lawful "form of conduct occurring solely for the purpose of or in support of . . . wildlife management, wildlife or depredation control, or shooting preserve practices as regulated by state and federal law." PENAL § 42.092(f)(1)(B). Appellant argues that the State failed to prove that he was not engaged in depredation control. Under the statute, "'Depredation' means the loss of or damage to agricultural crops, livestock, poultry, wildlife, or *personal property*." TEX. PARKS & WILD. CODE ANN. § 71.001(10) (West Supp. 2016) (emphasis added); *see* PENAL § 42.092(a)(5) (providing that the definition of depredation is the same as that in Section 71.001 of the Texas Parks and Wildlife Code).

Appellant's counsel argued that Appellant had *engaged* in depredation control when Appellant shot the boxer to protect his personal property, namely his Chihuahua. While Appellant's characterization of his Chihuahua as personal property is supported by Texas law, the State and Appellant disagree as to the applicability of the depredation control exception to "dogs" or "domestic dogs."

But even if we assume, without deciding, that Section 42.092 applies to depredation control against "dogs" or "domestic dogs"—as Appellant advocates—a reasonable factfinder could conclude that Appellant was not attempting to prevent "loss of or damage to" his Chihuahua when he shot the boxer. Winter testified that Appellant had put his dog inside the house prior to coming back outside and shooting the boxer. Additionally, Appellant testified that, as the three dogs approached him, he picked up his Chihuahua, walked into his home, and put his Chihuahua safely inside his home. Appellant said that, after he put the Chihuahua down, "[i]t dawn[ed] on [him that he has] got a lady out front," so he grabbed his shotgun and went back outside. However, he only did this *after* he placed the Chihuahua inside the house and, thus, *after* he had eliminated any risk of damage to his dog. The jury chose not to believe his claim that he was protecting his dog. The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given their testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). After a review of the record in the light most favorable to the verdict, we hold that a reasonable factfinder could have concluded beyond a reasonable doubt that Appellant did not shoot the boxer to prevent loss of or damage to his personal property. *See* PENAL § 42.092(a)(5), (b)(2), (f)(1)(B); PARKS & WILD. § 71.001(10); *see also Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We overrule Appellant's first issue.

6

B. *Issues Two through Five: The trial court did not err when it charged the jury on the definition of property, refused to provide the requested instructions for necessity and depredation, and declined to define that personal property includes a dog.*

In Issues Two through Five, Appellant contends that the trial court erred when it denied his request to instruct the jury on the defense of necessity, refused to give definitions for the terms "depredation" and "property," and denied his request to instruct the jury that dogs are personal property. When we review a jury-charge issue, we first decide whether error exists, and if it does, then we conduct a harm analysis. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985); *see Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).

To be entitled to a necessity instruction, there must have been evidence that Appellant reasonably believed his conduct was immediately necessary to avoid imminent harm, and he must have admitted to the conduct charged. PENAL § 9.22; *Young v. State*, 991 S.W.2d 835, 838–39 (Tex. Crim. App. 1999). A trial court must give a requested instruction on every defensive issue that is raised by the evidence. *See Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013). A defensive issue is raised by the evidence if there is some evidence, regardless of its source, on each element of a defense that, if believed by the jury, would support a rational inference that the element is true. *See Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). Appellant testified that he placed his own dog in his house and then went outside with his shotgun and shot the boxer. He said that he was concerned about a woman out there, but there was no evidence from any source that the dogs threatened the woman or that Appellant's conduct was immediately necessary to protect her or anyone else from an imminent attack by one or more of the dogs. *See Henley v. State*, 493 S.W.3d 77, 89–90 (Tex. Crim. App. 2016) (explaining the terms "immediately necessary" and "imminent"). Therefore, the trial court did not err when it refused to give a necessity instruction.

The trial court also did not err when it refused to give the definition of depredation, which is defined as "loss of or damage to agricultural crops, livestock, poultry, wildlife, or personal property." *See* PARKS & WILD. § 71.001(10). There was no evidence that Appellant had suffered a loss to crops, livestock, poultry, wildlife, or personal property; Appellant's dog was in the house when he shot the boxer. Appellant's conduct did not involve depredation control, as we further explain in Section "IV. C" below. In addition, there was no evidence that the boxer had threatened anyone or anything or caused any damage prior to the incident in this case. Moreover, there was no evidence that would have supported the issuance of a permit for depredation control, and there was no evidence that a permit had been issued.

Appellant's complaint about the request for a definition of "property" as "tangible or intangible personal property" is moot because the trial court gave that instruction.

Finally, on the issue of a dog being tangible personal property, such a definition is not present in the Parks and Wildlife Code, and a "trial court may not include an instruction that focuses the jury's attention on a specific type of evidence that may support a finding of an element of an offense." *Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012). The trial court properly refused to include an instruction on a domestic dog being personal property because depredation was not an issue and because such an instruction would have been an improper comment on the evidence. *See Kirsch*, 357 S.W.3d at 651 (explaining that, if a jury-charge instruction "is not derived from the [penal] code, it is not 'applicable law'" under Article 36.14 of the Texas Code of Criminal Procedure (alteration in original) (quoting *Walters v. State*, 247 S.W.3d 204, 214 (Tex. Crim. App. 2007)). Moreover, such a definition is unnecessary where the trial court included the definition of owner and property in the jury charge. The jury would have had common knowledge and

8

experience that a dog is an owner's property. We overrule Appellant's second, third, fourth, and fifth issues.

> C. *Issue Six: The trial court did not err when it instructed the jury that no laws regarding state or federal wildlife management, depredation control, or shooting preserve practices applied to this case.*

Appellant asserts that the trial court erred when it instructed the jury, over his objection, that "there are no laws of wildlife management, wildlife or depredation control, or shooting preserve practices as regulated by state and federal law that apply to this case." We again disagree with Appellant. As we outlined in the previous section, when we review a jury-charge issue, we first decide whether error exists. *See Ngo*, 175 S.W.3d at 743.

The trial court's charge to the jury must set forth the law applicable to the case. CRIM. PROC. art. 36.14. Therefore, the trial court must instruct the jury on each element of the offense or offenses charged and include in its charge each statutory definition that affects the meaning of an element of the offense. *Murphy v. State*, 44 S.W.3d 656, 661 (Tex. App.—Austin 2001, no pet.). The statutory definition of "[e]lement of offense" includes "the negation of any exception the offense." PENAL § 1.07(a)(22)(D); *see LaBelle v. State*, 692 S.W.2d 102, 105 (Tex. Crim. App. 1985); *Blackmon v. State*, 644 S.W.2d 738, 741 (Tex. Crim. App. [Panel Op.] 1983), *overruled in part on other grounds by Smith v. State*, 739 S.W.2d 848, 853 (Tex. Crim. App. 1987). An exception must be defined within the statute and specifically prefaced with the phrase, "It is an exception to the application of . . . ." PENAL § 2.02(a); *see Ex parte Davis*, 542 S.W.2d 192, 197 (Tex. Crim. App. 1976).

Section 42.092 states that:

> It is an exception to the application of this section that the conduct engaged in by the actor is a generally accepted and otherwise lawful . . . form of conduct occurring solely for the purpose of . . .

9

wildlife management, wildlife or depredation control, or shooting preserve practices as regulated by state and federal law.

PENAL § 42.092(f)(1)(B). The trial court properly instructed the jury on the Section 42.092 exception as an element of the offense. The Section 42.092 exception references "state and federal law." The trial court subsequently instructed the jury "that there are no laws of wildlife management, wildlife or depredation control, or shooting preserve practices as regulated by state and federal law that apply to this case." The trial court did not err when it instructed the jury. We overrule Appellant's sixth issue.

## V. *Analysis of Issues Seven Through Sixteen*

In Issues Seven through Sixteen, Appellant challenges the trial court's decision to admit certain testimony given by five witnesses. In Issues Seven and Eight, Appellant argues that the trial court erred when it admitted certain testimony given by Charles Harris that violated Rules 401 and 608(b) of the Texas Rules of Evidence. In Issues Nine through Sixteen, Appellant asserts that the trial court abused its discretion when it admitted certain testimony from Kelly Brown, David Shaw, Russell Potter, and Donna Smith that violated Rules 404(b) and 403 of the Texas Rules of Evidence. We will first outline the standard of review and then address these issues in turn.

### A. *Standard of Review*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). A trial court's ruling on extraneous offenses under Rule 404(b) will be upheld if the evidence shows that (1) an extraneous transaction is relevant to a material, non-propensity issue and (2) the probative value of that evidence is not substantially

10

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

    B.  *Issue Seven: Rule 401*

Appellant asserts in his seventh issue that the trial court abused its discretion when it allowed the State to impeach Harris with a specific instance of misconduct, not a criminal conviction, in violation of Rule 401 of the Texas Rules of Evidence. This objection was properly preserved for appellate review because Appellant objected to the admission of Harris's testimony and the trial court ruled on the objection. *See* TEX. R. APP. P. 33.1. The State argues that, because any evidence "bearing on credibility is relevant," the trial court's ruling was correct.

A witness may be cross-examined on any relevant matter, including credibility. TEX. R. EVID. 611(b). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." TEX. R. EVID. 401. Thus, a witness may be cross-examined on an issue that is probative of his credibility. *See Perry v. State*, 236 S.W.3d 859, 867 (Tex. App.—Texarkana 2007, no pet.). Additionally, a party has the right to pursue all avenues of cross-examination reasonably calculated to expose bias, motive, or interest for the witness to testify; therefore, the scope of appropriate cross-examination is necessarily broad. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996).

Here, the State asked on cross-examination about the circumstances surrounding Harris's departure from his previous job at the Midland County constable's office. The State wanted to ask Harris "specifically about the fact that [Harris] tampered with physical evidence and tampered with records," which caused him to resign from his position. The State argued that such evidence went directly to Harris's credibility as a witness. We agree. The test for relevance under Rule 401 does not hinge on, nor is it dictated by, the fact that the proffered evidence stems

11

from a prior act, as Appellant would have us hold. *See* TEX. R. EVID. 401. We conclude that the State's questioning sought to attack Harris's credibility and, thus, was relevant under Rule 401. We overrule Appellant's seventh issue.

C. *Issue Eight: Rule 608(b)*

In his eighth issue, Appellant asserts that the trial court erred when it permitted the State's impeachment of Harris with a specific instance of misconduct, not a criminal conviction, in violation of Rule 608(b) of the Texas Rules of Evidence. Rule 608(b) deals with a witness's character for truthfulness or untruthfulness.

To preserve a complaint for appellate review, the record must show that a specific and timely complaint was made to the trial court and that the trial court ruled on the complaint. TEX. R. APP. P. 33.1. The objecting party must state the grounds to support the requested ruling "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." *Id.* In addition, a party fails to preserve error when the contention urged on appeal does not comport with the specific complaint made to the trial court. *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).

Here, Appellant objected when the State broached the circumstances regarding Harris's departure from the constable's office. Specifically, Appellant objected twice on grounds of relevance, i.e., a Rule 401 objection, which we dealt with as part of Appellant's seventh issue. Appellant also indicated that Harris could not "be impeached with that" line of questioning. Beyond that, however, there was no mention of Rule 608. Additionally, it does not appear that the trial court understood Appellant's objection to be made on the basis of a Rule 608 complaint. We conclude that Appellant did not make the trial court aware of his Rule 608 complaint by either specifically lodging a Rule 608 objection or by the context of the discussion. Therefore, this issue was not preserved for review. TEX. R. APP. P. 33.1. Accordingly, we overrule Appellant's eighth issue.

D. *Issues Nine through Sixteen*: Testimony of Kelly Brown, David Shaw, Russell Potter, and Donna Smith

In Issues Nine through Sixteen, Appellant argues that the trial court abused its discretion when it admitted certain testimony of Brown (Issues Nine and Ten), Shaw (Issues Eleven and Twelve), Potter (Issues Thirteen and Fourteen), and Smith (Issues Fifteen and Sixteen). Specifically, Appellant asserts that the trial court admitted testimony from each witness in violation of Rule 404(b) and Rule 403 of the Texas Rules of Evidence.

*1. Rule 404(b)*

Rule 404(b) of the Texas Rules of Evidence provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). Rule 404(b)(2) provides, however, that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2).

In *Daggett v. State*, the Court of Criminal Appeals shed light on the inadmissibility of extraneous offense evidence subject to Rule 404(b). 187 S.W.3d 444, 453–54 (Tex. Crim. App. 2005). Specifically, the court addressed the situation of how and when Rule 404(b) applies when a defendant puts his character at issue:

> When a witness makes a broad statement of good conduct or character on a collateral issue, the opposing party may cross-examine the witness with specific instances rebutting that false impression, but generally may not offer extrinsic evidence to prove the impeachment acts. Where, as here, the defendant's statement of good conduct is directly relevant to the offense charged . . . the opponent may both cross-examine the defendant and offer extrinsic evidence rebutting the statement. This is not impeachment on a collateral matter. The statement of good conduct goes to the "heart" of the matter.

13

*Id.* at 453 n.24. Here, Appellant contends that the trial court improperly admitted testimony from Brown, Shaw, Potter, and Smith because their testimony did not fall within *Daggett*'s framework. We disagree with Appellant's argument as to Brown's testimony but agree as to testimony from Shaw, Potter, and Smith. We will address these two sets of testimony in turn.

### 2. *Issue Nine: Rule 404(b) and Brown's Testimony*

In his ninth issue, Appellant asserts that the trial court abused its discretion when it admitted testimony from Brown in violation of Rule 404(b). The State sought to elicit testimony from Brown about an incident in which Appellant told Brown that he was going "to shoot [her] dog" because the dog was in Appellant's yard. Brown testified that her dog had not barked at Appellant, threatened Appellant, or been close to Appellant. Appellant appeared to be angry during the incident, and Brown believed that Appellant was going to retrieve a firearm from his home to follow through with his threat. When Brown pleaded, "Please don't shoot my dog," Appellant said, "No, [your dog is] on my property."

The State argued that the evidence showed Appellant's motive in this case to shoot the boxer and rebutted Appellant's claim that the boxer acted aggressively toward Appellant. The State also argued that Brown's testimony was admissible under the "doctrine of chances." Evidence offered for a purpose other than to show conformance with character is explicitly admissible under Rule 404(b)(2).

We agree with the State that the evidence tended to rebut the defensive theory that the boxer was aggressive and attacked Appellant, thereby justifying Appellant's actions. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (rebutting a defensive theory is "one of the permissible purposes for which evidence may be admitted under Rule 404(b)"). Additionally, Brown's testimony went to the heart of the issue—whether the boxer acted aggressively toward Appellant, thereby justifying Appellant's use of force—and did not violate Rule 404(b). *See Daggett*,

187 S.W.3d at 453 n.24. Therefore, the trial court did not abuse its discretion in admitting the evidence.[1] We overrule Appellant's ninth issue.

We note that Appellant argues that the evidence was not admissible under the "doctrine of chances" or to show motive, citing authority to support his argument. Having concluded that the evidence was admissible under Rule 404(b) for the reasons mentioned above, we need not address those arguments. *See Hayden v. State*, 296 S.W.3d 549, 553 (Tex. Crim. App. 2009) (stating that a trial court's ruling should be upheld if it is reasonably supported by the record and is correct under any theory of law).

### 3. *Issues Eleven, Thirteen, and Fifteen*: Rule 404(b) and Testimony from Shaw, Potter, and Smith

Appellant argues in his eleventh, thirteenth, and fifteenth issues that Rule 404(b) was violated when Shaw testified that Appellant chased Shaw's teenage sons through the neighborhood, trespassed on Shaw's property, and damaged Shaw's sprinklers during the chase (Issue Eleven); when Potter testified that Appellant blocked Potter's driveway and confronted Potter's wife about their teenage sons recklessly driving a golf cart in Appellant's neighborhood (Issue Thirteen); and when Smith testified that she heard gunshots, saw Appellant shoot chickens, and saw Appellant pile them on the road in front of his residence (Issue Fifteen). We hold that none of these testimonies were permissible under Rule 404(b) and that they did not logically relate to the impeachment of the testimony given by Appellant during his direct examination.

The State asserts that Issues Eleven and Fifteen "were not preserved" for review because Appellant did not object when the State asked Appellant on cross-examination whether he was following the rules when he chased Shaw's sons or

---

[1]We note that we must still review the trial court's ruling under the guise of Rule 403, which Appellant correctly asserts as part of his tenth issue. We will address the Rule 403 analysis as applicable to Brown's testimony below, following our outline of Rule 403.

when he shot his neighbor's chickens. The Court of Criminal Appeals has held that erroneously admitting evidence "will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling," whether introduced by the defendant or the State. *See Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)). However, Appellant's testimony during cross-examination was not the same as the complained-of testimony of Shaw and Smith. As such, Appellant's eleventh and fifteenth issues were properly preserved when his trial attorney objected to Shaw's testimony and Smith's testimony as inadmissible and related to an irrelevant extraneous offense.

"If a defendant objects on the grounds that the evidence is not relevant, violates Rule 404(b), or constitutes an extraneous offense, the State must show that the uncharged misconduct evidence has relevance apart from showing character." *Sandoval v. State*, 409 S.W.3d 259, 298 (Tex. App.—Austin 2013, no pet.). Here, Appellant timely and properly objected to Shaw's testimony, and the State failed to demonstrate the solicited testimony's admissibility. While the State argues in its brief that Shaw's testimony was admissible because it sought to impeach Appellant's earlier direct examination that he was a "rule follower," this argument is not compelling. Shaw testified that Appellant once chased Shaw's three sons with his pickup, trespassed onto Shaw's property, and damaged Shaw's sprinkler system. Appellant's alleged chasing incident is not related to his ability to follow rules; indeed, Appellant could have followed Shaw's sons without having broken a single rule or law.

For similar reasons, the trial court abused its discretion when it admitted testimony from Potter and Smith. Rule 404(b) permits the admittance of extraneous offenses or bad acts "if such evidence logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or

defensive evidence that undermines an elemental fact." *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005). However, evidence that merely proves "the defendant acted in conformity with the character that he demonstrated when committing the previous bad act" is expressly prohibited by 404(b). *Sanders v. State*, No. 11-12-00045-CR, 2014 WL 2619398, at *3 (Tex. App.—Eastland Jan. 24, 2014, pet. ref'd) (mem. op., not designated for publication).

Potter testified that Appellant and Potter's wife once got into a verbal altercation over the Potters' children driving around the neighborhood in golf carts. Whereas, Smith testified that, five years ago, a man, who she believed might be Appellant, shot a couple of chickens near Appellant's house. Appellant did not open the door to such testimony when he testified during direct examination that he was a "rule follower." Potter's and Smith's testimony addressed extraneous acts that did not go to the heart of the issue and were not logically related to Appellant's case. Instead, these extraneous acts were aimed to discredit Appellant by demonstrating that he had a bad character or that he had a propensity for committing bad acts. This type of propensity evidence is the exact type of evidence that is expressly prohibited by Rule 404(b). *Sanders*, 2014 WL 2619398, at *3. Because the admitted evidence—as challenged by Appellant in Issues Eleven, Thirteen, and Fifteen—sought to prove extraneous acts that did not go to the "heart of the matter," we hold that the trial court abused its discretion when it admitted the evidence.

### 4. *Issues Ten, Twelve, Fourteen, and Sixteen: Rule 403*

Appellant argues in his tenth, twelfth, fourteenth, and sixteenth issues that, even if the testimony of Brown, Shaw, Potter, and Smith, respectively, was otherwise admissible, the testimony was improperly admitted by the trial court in violation of Rule 403. Rule 403 of the Texas Rules of Evidence provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue

delay, or needless presentation of cumulative evidence.  TEX. R. EVID. 403; *see Henley*, 493 S.W.3d at 93.  A trial court is presumed to have engaged in the required balancing test when Rule 403 is invoked.  *Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997).  An analysis under Rule 403 includes, but is not limited to, the following factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence.  *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012).

### a. *Issue Ten: Rule 403 and Brown's Testimony*

In his tenth issue, Appellant asserts the trial court erred in admitting Brown's testimony regarding Appellant's previous threat to shoot Brown's dog because that testimony violated Rule 403 of the Texas Rules of Evidence.  We conclude that the trial court did not abuse its discretion when it determined that the evidence should not be excluded under Rule 403.  The testimony was highly probative to discredit the defensive theory that the boxer acted aggressively toward Appellant and to show potential motive, preparation, and intent.  Additionally, the State needed the testimony because it strongly rebutted Appellant's defensive theory, as outlined above.  Therefore, we overrule Appellant's tenth issue.

### b. *Issues Twelve, Fourteen, and Sixteen:  Rule 403 and Testimony from Shaw, Potter, and Smith*

In his twelfth, fourteenth, and sixteenth issues, Appellant argues that the trial court abused its discretion when it admitted evidence in violation of Rule 403.  We do not need to reach these issues because we held that the complained-of testimony of Shaw, Potter, and Smith was inadmissible under Rule 404(b).  *See* TEX. R. APP. P. 47.1.

## VI. *Harm Analysis for Erroneously Admitted Evidence*

We analyze, under a Rule 44.2(b) harm analysis, any errors by the trial court in admitting evidence. *See Hernandez v. State*, 176 S.W.3d 821, 824–25 (Tex. Crim. App. 2005); *see also* TEX. R. APP. P. 44.2(b). In accordance with Rule 44.2(b), an error is reversible when it affects a defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b). A substantial right is affected when the error has "a substantial and injurious effect or influence in determining the jury's verdict." *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). In evaluating the harm of an erroneous admission of evidence, a reviewing court considers everything in the record, including:

> [A]ny testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error.

*Rich v. State*, 160 S.W.3d 575, 577–78 (Tex. Crim. App. 2005). We note that the erroneous admission of extraneous-offense evidence often weighs in favor of finding harm. "Extraneous-offense evidence is 'inherently prejudicial, tends to confuse the issues, and forces the accused to defend himself against charges not part of the present case against him.'" *Sims v. State*, 273 S.W.3d 291, 294–95 (Tex. Crim. App. 2008) (quoting *Pollard v. State*, 255 S.W.3d 184, 187–88 (Tex. App.—San Antonio 2008), *aff'd*, 277 S.W.3d 25 (Tex. Crim. App. 2009)). However, when reviewing the record as a whole, it is evident that an overwhelming number of factors indicate that the admission of the testimony of Shaw, Potter, and Smith did not affect Appellant's substantial rights.

The record reflects that Appellant admitted that he shot the boxer. The jury heard testimony from neighbors Amy Martin and Winter that the boxer was a good dog who did not act aggressively. Marvin and Karen Esterly, the owners of the

boxer, also testified as to the boxer's good, nonaggressive nature. Whereas, Appellant alleged that, prior to the shooting, the boxer and the other two dogs had their tails up and ears back and were aggressively showing their teeth. The jurors examined this exact issue during their deliberations when they asked to review Appellant's testimony concerning the boxer's alleged aggressive behavior.

The record also reflects that, without objection and prior to Smith's testimony, Appellant had testified that he shot his neighbor's chickens. The testimony of Shaw, Potter, and Smith was offered in rebuttal, was developed quickly, and was not mentioned in detail in the State's closing. The only mention of this testimony during the State's closing was a reference to the "five people" who testified about "the type of gentleman that Stan Atnipp is." Additionally, prior to the testimony of Shaw, Potter, and Smith, the trial court gave limiting instructions to the jury and directed the jury to only consider the evidence for impeachment purposes. "Instructions to the jury are generally considered sufficient to cure improprieties that occur during trial," and appellate courts "generally presume that a jury will follow the judge's instructions." *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). In this case, the State did not spend much time developing the three lines of questioning and barely mentioned the evidence in its closing. After a review of the entire record, we conclude that the trial court's error when it admitted evidence of extraneous bad acts did not have a substantial or injurious effect on the jury's verdict and did not affect Appellant's substantial rights. We overrule Appellant's eleventh, thirteenth, and fifteenth issues.

## VII. *Alleged Jury-Charge Error*

In his seventeenth issue, Appellant asserts that the trial court erred when it failed to instruct the jury to restrict the jury's consideration of extraneous offenses by Appellant to the sole purpose for which they were admitted: the purpose of impeachment. Appellant concedes that he did not make this objection at trial, but

he claims that he suffered egregious harm as a result of the error. Because Appellant did not object at trial, he is only entitled to a reversal if he suffered egregious harm. *Ngo*, 175 S.W.3d at 743–44; *Almanza*, 686 S.W.2d at 171.

When we review an alleged jury-charge error, we must first determine if there was an error in the charge. *Almanza*, 686 S.W.2d at 171; *see Ngo*, 175 S.W.3d at 743. If there was an error in the charge, the court must then determine whether the error was harmful to the accused. *Almanza*, 686 S.W.2d at 171. If a defendant failed to object to the jury-charge error, then we will reverse only if he suffered "egregious harm." *Ngo*, 175 S.W.3d at 743–44 (citing *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004); *Almanza*, 686 S.W.2d at 171). Neither the State nor the defendant bears the burden of proving harm; we must review the entire record to determine if the defendant suffered harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

A review of the record indicates that, with respect to the extraneous acts admitted for the purpose of impeachment, the trial court gave limiting instructions at the time the evidence was admitted, for the testimony of Shaw, Potter, and Smith, as required under Rule 105(a) of the Texas Rules of Evidence. *See* TEX. R. EVID. 105(a); *Rankin v. State*, 974 S.W.2d 707, 713 (Tex. Crim. App. 1996) (holding that, if requested by defendant opposing introduction of evidence, the trial court must give limiting instruction when evidence admitted). In addition, the jury charge outlined that the jury must believe beyond a reasonable doubt that Appellant committed an extraneous act in order for the jury to consider that evidence for the purpose of rebutting a defense or for the purpose of showing motive, intent, or absence of mistake. *See* TEX. R. EVID. 105(a); *Hammock v. State*, 46 S.W.3d 889, 893 (Tex. Crim. App. 2001). Because the trial court gave the limiting instruction for the evidence admitted for impeachment and gave the instruction on the burden of proof for the other extraneous acts, the trial court did not give an erroneous charge.

*See Hammock*, 46 S.W.3d at 893; *Rankin*, 974 S.W.2d at 713. As we have previously explained, the trial court should not have admitted the objectionable and inadmissible evidence. However, because Appellant did not suffer some harm as a result of the erroneous admission of that evidence, and because limiting instructions were given when that evidence was offered, he necessarily has not met the higher standard of egregious harm for an alleged error for which he made no objection. We overrule Appellant's seventeenth issue.

## VIII. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


April 20, 2017

Publish. *See* Tex. R. App. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.