# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00241-CR

**Christopher Alexander Garza, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 27TH DISTRICT COURT OF LAMPASAS COUNTY
### NO. 9851, THE HONORABLE JOHN GAUNTT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Christopher Alexander Garza of a third-degree felony for evading arrest using a vehicle, and the trial court rendered judgment on the verdict. *See* Tex. Penal Code § 38.04(a); Act of May 27, 2011, 82d Leg., R.S., ch. 920, § 3, 2011 Tex. Gen. Laws 2321, 2322 (codified at Tex. Penal Code § 38.04(b)(2)(A)).[1] Garza pleaded true to a prior-felony enhancement, and the jury sentenced him to 20 years in prison and a $5,000 fine. *See* Tex. Penal Code §§ 12.33, 12.42(a).

On appeal, Garza raises two issues—(1) evidence of alleged illegal drugs, and drug paraphernalia, found in his car should have been excluded and (2) the jury charge's special-issue definition of "deadly weapon" should have included added language distinguishing actual danger

---

[1] The Legislature has enacted two different versions of Section 38.04(b). *Compare* Act of May 27, 2011, 82d Leg., R.S., ch. 920, § 3, 2011 Tex. Gen. Laws 2321, 2322, *with* Act of May 24, 2011, 82d Leg., R.S., ch. 839, § 4, 2011 Tex. Gen. Laws 2110, 2111; *see Adetomiwa v. State*, 421 S.W.3d 922, 925–27 (Tex. App.—Fort Worth 2014, no pet.).

to others from merely potential danger to others. Because Garza's objections under Rules of Evidence 404(b) and 403 did not require exclusion and because the special-issue definition of "deadly weapon" tracked the statutory language, we affirm.

## BACKGROUND

Garza, by his own admission, was "driving like a crazy man" northbound into the city of Lampasas. Another driver on the road called 911 to report Garza's dangerous driving, telling dispatch that someone would likely be killed by Garza's weaving, speeding Mercedes.

South of the city, sheriff's deputies, including Deputy Justin Wilson, spotted the Mercedes and began a car chase. A video of the chase shows Deputy Wilson turning on his patrol vehicle's red and blue emergency flashing lights and siren and tailing the Mercedes. The Mercedes pulled over to the side of the road as if to comply with a traffic stop but then accelerated and drove back into the northbound lane toward town. A deputy in another patrol vehicle joined the chase with his emergency lights illuminated as well. So did a patrolling officer from the Lampasas police department. Law enforcement chased the Mercedes all the way through town.

At several points in town, the Mercedes ran red lights or changed lanes unsafely without signaling. Then as the chase proceeded north beyond the city, the Mercedes to avoid being corralled by law-enforcement vehicles went into the oncoming-traffic lane. One driver in that lane had to swerve onto the shoulder to avoid a collision with the Mercedes.

The Mercedes eventually drove off the righthand side of the road and into a ditch. The Mercedes tried backing up and other maneuvers to dislodge itself, but it was stuck. Garza emerged from the Mercedes and was arrested.

At trial, Deputy Wilson testified that a baggie containing a white powder was in the Mercedes and that Garza had been seen trying to dump out the baggie's contents. Deputy Wilson also testified about a drug pipe found in the car, and the trial court admitted an exhibit of a picture of the pipe. Otherwise at trial, and in Garza's own words, "[h]is identity, as the driver and sole occupant of the car, was never in issue." Within the court's jury charge was a special issue on Garza's use of a deadly weapon, which instructed the jury that "'[d]eadly [w]eapon' means anything that in the manner of its use is capable of causing death or serious bodily injury," *see* Tex. Penal Code § 1.07(a)(17)(B), and asked it to decide whether Garza had "used a deadly weapon, namely: a motor vehicle, during the commission of the offense." The jury convicted Garza of evading arrest and found the special issue to be "true," and he now appeals.

## ADMISSION OF EVIDENCE—RULES 404(b) AND 403

In his first issue, Garza maintains that the trial court should have excluded the testimony and exhibit offered to show that he had illegal drugs and drug paraphernalia in his car, under either Rule of Evidence 404(b) or Rule of Evidence 403. We review a challenge to an admission of evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).

Despite a Rule 404(b) objection, and in a driver's prosecution for evading arrest using a vehicle, a trial court may admit evidence of illegal drugs found in the driver's vehicle as evidence of the driver's motive for evading arrest. *Phillips v. State*, 534 S.W.3d 644, 654 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *see also Colone v. State*, 573 S.W.3d 249, 267 (Tex. Crim. App. 2019) ("[T]he prosecution may 'always' offer evidence to show motive."). Garza argues that the illegal drugs and paraphernalia could not possibly show his motive to evade arrest

3

because "he was driving like a crazy man *before* he became the focus of police attention," with the chase's occurring before any officer knew of the illegal drugs or paraphernalia in the car. But it is within the "zone of reasonable disagreement," *see Garcia v. State*, 201 S.W.3d 695, 704–05 (Tex. Crim. App. 2006) (reversal for improper admission of evidence requires that trial court's admission decision be outside the "zone of reasonable disagreement"), and a fair inference that Garza could have had multiple motives for evading arrest, one of which was knowing that if law enforcement found the illegal drugs and paraphernalia in his car, he'd be subject to a harsher punishment, *see Bush v. State*, 628 S.W.2d 441, 444 (Tex. Crim. App. 1982) (motive evidence is admissible if it "fairly tend[s] to raise an inference in favor of the existence of a motive on the part of the accused to commit the alleged offense for which he is on trial" (quoting *Rodriguez v. State*, 486 S.W.2d 355, 358 (Tex. Crim. App. 1972))). The trial court thus did not abuse its discretion by admitting the evidence over the Rule 404(b) objection.

As for Rule 403, if the probative value of evidence is substantially outweighed by certain dangers, the evidence is inadmissible. *Gonzalez v. State*, 544 S.W.3d 363, 371 (Tex. Crim. App. 2018). The dangers identified in the rule are "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. Unfair prejudice involves "an undue tendency to suggest an improper basis for reaching a decision," *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000), and often involves decisions based on emotion, *see Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *Gittens v. State*, 560 S.W.3d 725, 732 (Tex. App.—San Antonio 2018, pet. ref'd). "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010); *accord Walter v. State*, 581 S.W.3d 957, 978 (Tex. App.—Eastland 2019, pet. ref'd).

4

Rule 403 calls for a balancing test, under which the analysis includes, but need not be limited to, (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for it. *Colone*, 573 S.W.3d at 266; *Walter*, 581 S.W.3d at 978. Probative value is "the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Davis*, 329 S.W.3d at 806. The balancing test "is always slanted" in favor of admissibility. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009).

Under the first factor, evidence of motive tends to be highly probative evidence in the State's favor. *See Lawton v. State*, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995), *abrogated in part on other grounds*, *Mosley v. State*, 983 S.W.2d 249, 263 n.18 (Tex. Crim. App. 1998); *Atnipp v. State*, 517 S.W.3d 379, 394 (Tex. App.—Eastland 2017, pet. ref'd). So it was here—Garza's possessing illegal drugs in his vehicle and trying to dump the drugs out of the baggie are highly probative of his intentionally fleeing law enforcement because he didn't want to get caught with the drugs. This first factor weighs in favor of admission.

Under the second, we see no risk of evoking irrationality here with evidence of possession of illegal drugs, nor does Garza's appellate brief point us to any. And any risk here of evoking irrationality does not substantially outweigh the evidence's probative value. This factor does not weigh against admission.

Under the third, the time needed to develop the evidence was not long, occupying only a few of the questions that the prosecutor asked Deputy Wilson. Plus, showing the jury the video of the car chase and interspersing examination of Deputy Wilson within that presentation appears to have taken up much more time than did the presentation of the evidence of the illegal

5

drugs and paraphernalia. Garza's appellate brief does not argue that the evidence took too long to develop. This third factor weighs in favor of admission.

Under the final factor, we agree with Garza that the State did not need the evidence. The evidence of the car chase, beginning outside Lampasas, then traveling through the city, and ending outside the city, overwhelmingly showed Garza's fleeing law enforcement and strongly suggested that he intended to do so, given how often his vehicle was closely trailed, flanked, or overtaken by law-enforcement vehicles with their emergency lights flashing and sirens screaming, *see* Tex. Penal Code § 38.04(a) (elements of offense). This factor weighs against admission.

But taking all the factors together, the circumstances allowed the trial court to exercise its discretion to admit the evidence over the Rule 403 objection. Rule 403 balancing begins slanted in favor of admissibility, *see De La Paz*, 279 S.W.3d at 343, and the circumstances here did not upend that beginning balance. We overrule Garza's first issue.

## "DEADLY WEAPON" JURY-CHARGE DEFINITION

In his second issue, Garza complains about the special-issue definition of "deadly weapon." We review a claim of charge error first for whether the asserted error exists in the charge and then if so, the requisite amount of harm to the defendant. *Thanh Cuong Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Harmel v. State*, 597 S.W.3d 943, 956 (Tex. App.—Austin 2020, no pet.).

Garza argues that beyond the statutory language, the charge definition needed language telling the jury that it could find that a deadly weapon was used only if the deadly weapon actually caused danger to others rather than merely potentially caused danger. Garza's lead authorities for his contention are cases involving evidence-sufficiency challenges to

6

deadly-weapon findings under the statutory definition of "deadly weapon," Penal Code section 1.07(a)(17). *Cf. Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005); *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003); *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000); *Mann v. State*, 13 S.W.3d 89, 92 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001). His authorities hold that "[t]o sustain a deadly weapon finding, there must be evidence that others were actually endangered, not 'merely a hypothetical potential for danger if others had been present.'"[2] *Cates*, 102 S.W.3d at 738 (quoting *Mann*, 13 S.W.3d at 92).

Garza's authorities on this issue are not jury-charge-error cases but involve reviewing courts' explaining what the language of Section 1.07(a)(17) requires so that the courts can measure the sufficiency of the evidence against the statute's requirements, *cf.* Tex. Penal Code § 1.07(a)(17)(B); *see, e.g.*, *Drichas*, 175 S.W.3d at 798. The "deadly weapon" definition used here tracks the statutory language.[3] *See* Tex. Penal Code § 1.07(a)(17)(B). Thus, because Garza's authorities are explaining what the statutory language means and the charge here used the statutory language, the charge encompassed the actual-danger concept that Garza argues is missing. In other words, what Garza thinks was missing from the charge is, according to his own authorities, already encompassed by the statutory language that the charge used.

---

[2] But later decisions by the Court of Criminal Appeals teach that a "deadly weapon finding can be made even in the absence of actual harm *or threat*." *Prichard v. State*, 533 S.W.3d 315, 320 (Tex. Crim. App. 2017) (emphasis added) (citing *Plummer v. State*, 410 S.W.3d 855, 859 (Tex. Crim. App. 2013)).

[3] The definition in the charge left out only the following emphasized language: "anything that in the manner of its use *or intended use* is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17)(B) (emphasis added). This omission benefitted Garza because it took away from the State one of the statutory, disjunctively joined alternatives for establishing a "deadly weapon."

That problem aside, for the court to have done what Garza asks would have risked adding to the charge "an improper comment on the weight of the evidence." *See Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012). When a statutory term is common but undefined, the jury is "free to assign th[e] term 'any meaning which is acceptable in common parlance.'" *Id.* at 652 (quoting *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995)). "Although an appellate court may articulate a definition of a statutorily undefined, common term in assessing the sufficiency of the evidence on appellate review, a trial court's inclusion of that definition in a jury charge may constitute an improper comment on the weight of the evidence." *Id.* at 651. Garza's requested definition amounts to defining the statutory, common term "capable of causing death or serious bodily injury" when the statute itself does not define that term. Instead of adding what Garza requested, the trial court tracked the statutory definition, which is generally not error. *See Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) ("Appellant concedes in his brief that the trial court's instruction essentially tracks the statutory language . . . . Following the law as it is set out by the Texas Legislature will not be deemed error on the part of a trial judge." (internal citation omitted)); *Garcia v. State*, 212 S.W.3d 877, 885 (Tex. App.—Austin 2006, no pet.) (deadly-weapon charge definition tracking only Penal Code section 1.07(a)(17)(B) was not error), *overruled in part on other grounds*, *Wagner v. State*, 539 S.W.3d 298, 315 n.27 (Tex. Crim. App. 2018); *Alexander v. State*, 906 S.W.2d 107, 111 (Tex. App.—Dallas 1995, no pet.) ("Because the phrase at issue is not statutorily defined, the trial judge was not required to define the phrase in the charge to the jury. Thus, the trial judge did not err in refusing to submit appellant's requested

8

definition." (internal citations omitted)).[4]  The definition used here allowed the jury to find all that it needed to find.  *See Drichas*, 175 S.W.3d at 799 ("The plain language of the statute indicates that a deadly weapon finding will be sustained if the definition of a deadly weapon is met."); *Stanul v. State*, 870 S.W.2d 329, 334 (Tex. App.—Austin 1994, pet. ref'd) (per curiam) (saying of statutory definition of "deadly weapon," "[w]here a statute is clear and unambiguous, the legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from the statute").

Because Garza's issue has identified no error in the jury charge, we need not proceed to a harm analysis.  We overrule this issue.

## CONCLUSION

We affirm the trial court's judgment.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed:  November 23, 2022

Do Not Publish

---

[4] Our sister court, in a nonprecedential opinion, has overruled a charge-error appellate issue indistinguishable from Garza's for the same reasons as we have articulated in this paragraph. *See Kenney v. State*, No. 02-19-00313-CR, 2021 WL 832718, at *6 (Tex. App.—Fort Worth Mar. 4, 2021, no pet.) (mem. op., not designated for publication).