NO.
12-05-00328-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

JOHN THOMPSON,            §                      APPEAL FROM THE SEVENTH

APPELLANT

 

V.        §                      JUDICIAL DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §                      SMITH
COUNTY, TEXAS

                                                                                                                                                           


OPINION

            John
Thompson appeals his jury conviction for theft. 
The trial court assessed punishment at two years in a state jail
facility, probated for five years.  In
two issues, Appellant contends the evidence is insufficient to prove venue in
Smith County and insufficient to support the jury’s guilty verdict.  We affirm.

 

Background

            Chris
Cheflin, a resident of Louisiana, owned a forty foot flatbed trailer that he
wanted to have rebuilt.[1] 
The trailer was stored on property belonging to his friend, A.T. Green,
in Winona, which is in Smith County, Texas. 
Green had known Appellant for five or six years.  Appellant had a sandblasting and welding
business located on property he rented from Don Matthews in Gladewater, which
is in Gregg County.[2]  According to
Cheflin, Green suggested Appellant do the work on Cheflin’s trailer after
Appellant asked Green if he had any work available.  However, Green testified that, in April 2003,
he contacted Appellant about rebuilding Cheflin’s trailer.  Appellant also testified that Green contacted
him about doing the work.  Cheflin
explained that, after Green discussed it with him, it was agreed that Cheflin
would purchase the necessary materials for the job and Appellant would take the
trailer to Gregg County, where his equipment was located, to do the work.  Pursuant to this oral contract, Appellant
took the trailer to Gladewater in April 2003. 
Cheflin testified that he paid Appellant $700.00 to start the job and
Green later gave Appellant an additional $1,400.00.  

            Appellant
agreed that he and Green had a verbal contract. 
However, he was not initially aware that the trailer belonged to
Cheflin.  He testified that he did quite
a bit of work on the trailer,

 including brakes and drums, air lines, valves,
sandblasting, and welding.  Green
acknowledged that Appellant had done some work on the trailer.  Cheflin testified that Appellant had rebuilt
the replacement bearings, brake shoes, and air cambers.  Appellant said that, while all parts he
needed were paid for by Green, he was not paid for the work he did.  He testified that Green owed him close to
$2,000.00 and kept making excuses for not paying.  He denied having been given any advances.        At
the time Appellant took the trailer, it had eight old tires and rims on
it.  Cheflin purchased eight new tires
for $390.00 each and eight rims for $80.00 each.  He had the tires mounted on the rims at Green’s
Winona property.  According to Cheflin,
Appellant called and said “he was getting close to being through” and “needed
the tires because he was getting ready to sandblast it and paint it and get it
ready to bring back over.”  Cheflin
testified that Appellant picked up the new tires and rims about two weeks after
he got the trailer.  According to
Appellant, after the trailer had been in Gladewater “a month or two at least,”
he went to see Green at Green’s place of business in Smith County to get
paid.  While he was there, Green told him
to take the tires and rims, so Appellant took them to Gregg County where he was
working on the trailer.  On cross
examination, Appellant agreed that he took the tires “pretty close” to April
2003.  “Right after [Appellant] carried
them over there,” Green saw the tires and rims at Matthews’s place, but they
were not on the trailer.  Green testified
that Appellant told him he would mount the tires on the trailer as soon as he
got through working on it.  “A little
later after that,” Green went back and, although the trailer was there, the
tires and rims were not where they had been. 
Appellant told him he had them in a storage building.  Green never saw the tires again.  

             Appellant explained that, when he finished
working on the drums, he put the new tires and rims on the trailer.  However, because he thought he was not going
to get paid for the job, he took the tires and rims off the trailer and stored
them at the place where he was staying, on Bob Smith’s property in Gregg
County, for safekeeping.  Appellant
testified on direct that, a month or two after he took the tires to his house,
he told Green that the tires and rims were at his house “where [he] could watch
them” and that Green could have them back when he paid Appellant for the work
he did.  On cross examination, he said he
told Green about the first of August 2004 that he could have the tires when he
got his money.  He said the tires were
still at his house at that time. 
Appellant also testified that Green told him he would be paid some of
the money owed if he returned the tires and rims.  Cheflin and Green denied that Appellant ever
asked for payment or said he would give the property back if they paid him. 

            Cheflin
said he talked to Appellant only once after he took the tires.  Appellant said he spoke to Cheflin in person
twice, three or four months apart, both times at Matthews’s place.  He denied ever talking to Cheflin about the
tires.  Green spoke to Appellant three or
four times between April 2003 and September 2004, attempting to get the tires
and rims back for safekeeping until the trailer was ready.  Appellant told him he had them stored in a
safe place.  Cheflin testified that in
August 2004, he and Green went to the yard in Gladewater where Appellant
worked.  They saw the trailer there but
not the tires and rims.  Green testified
that in September 2004, he saw Appellant at a car wash and told him to return
the tires and rims or Cheflin would file charges.  According to Green, Appellant told him he
would bring them to Green, but Appellant never brought them back.  Green testified that he went to Appellant’s
house, “off Gregg County at Liberty City,” to get them, but Appellant would not
produce the tires or rims.  He told Green
not to worry about them because they were locked up.  Appellant acknowledged that it was in
September 2004 that Green told him they were thinking about filing theft
charges if he did not bring the tires back. 

            A
few days before Cheflin filed charges, Appellant sold the trailer to a third
party.  It was eventually returned to
Cheflin, but it did not have the new tires and rims on it.  On September 14, 2004, Cheflin filed theft
charges with the Smith County Sheriff’s Department for the missing tires and
rims.  While he was in jail, Appellant
called Cheflin and told him Green had stolen the tires.  Until that time, Appellant had always said he
had possession of the tires and would return them.

            Debra
Linthicum testified, explaining that she and Appellant had “shared the same
house on and off for two-and-a-half years.” 
She testified that she saw some new semi truck tires with rims in the
back of Appellant’s truck.  Appellant
commented to her that “he was going to have to go sell them to get his money.”  He said he was going to sell the tires at a
truck stop.  Approximately three or four
days or a week later,  he came by to see
her and told her he had been to Fordyce, Arkansas.  From the conversation, she assumed he went
there to visit his friends and relatives and to “get rid of” the tires.  She never saw him with the tires again.  Linthicum said it had “been some time ago
since this all took place.”  She
testified on August 31, 2005 and said it could have been a year since he said
he was going to sell the tires.  

            Richard
Swanson testified for the defense.  He
had been friends with Appellant for a “couple of years.”  About a year before the trial, in August or
September 2004, but “long before” Appellant was arrested, Swanson was on Bob
Smith’s property, where Appellant lived at the time.  While there, he saw a truck pulling a trailer
carrying six or eight tires.  The truck
was driven by an older, gray haired man.

            James
Riggins testified that he had known Appellant for about two years.  One day, not long after they met and two
years before the trial, he was on Mr. Smith’s property and saw a black man and
a white man loading eight big truck tires on a trailer.

            Appellant
explained that he had prepared a “labor lien” on the trailer and filed it in
Gregg County.  That document was entitled
“Lien Affidavit and Claim.”  In it, he
alleged that he furnished materials and labor between March 30, 2003 and July
1, 2003 and was owed $1,900.00.  Appellant
signed it on September 30, 2004 and filed it on October 1, 2004.  He explained that he was arrested for the
theft, got out of jail, and then filed the lien on the trailer that was the
subject of the theft charge.[3] 
The lien lists only the trailer because he had taken the tires off
before he filed it. At the time he filed the lien, he had made arrangements to
sell the trailer.  He took a thousand
dollar deposit from the buyer and moved the trailer, which had the old tires on
it at the time, to the buyer’s home in Kilgore. 
The trailer was in Kilgore at the time he filed the lien.  He took the deposit about a week before he
was arrested.  He planned to collect an
additional $900.00 when he procured the title to the trailer.  Cheflin took the trailer back after Appellant
filed the lien but before he could obtain the title through the lien
process.  Appellant testified that, at
the time he filed the lien on the trailer, the tires at issue had been in his
possession for seventeen months.  But, as
of the time of the trial, he no longer had control over the tires and rims “because
the tires, essentially, got up and walked off, you might say.”  He acknowledged that he never told the
detective in charge of the case that he had two witnesses who saw someone
taking the tires.  He characterized
Linthicum’s testimony about his selling the tires at a truck stop and returning
from Fordyce without the tires as lies.

 

Venue

            In
his first issue, Appellant contends the trial court erred in denying his motion
for directed verdict challenging venue. 
He asserts that he removed the tires from Smith County with the owner’s
consent and with the intention of putting them on the trailer in Gregg County
where he was working.  Appellant argues
that any unlawful appropriation would have begun at the point where he refused
to return the tires.  Therefore, the
intent to deprive the owner of the property was formed in, and the  alleged theft occurred in, Gregg County.  Appellant contends that the general venue
statute, Texas Code of Criminal Procedure Article 13.18, applies here rather
than the theft specific venue statute, Article 13.08.  Accordingly, Appellant concludes, Smith
County is not the appropriate site for his trial. 

Applicable Law

            The
State is required to prove that the prosecution is being brought in the proper
venue pursuant to Chapter 13 of the Texas Code of Criminal Procedure.  Ex parte Watson, 601 S.W.2d
350, 352 (Tex. Crim. App. 1980).  The
general rule provides that “if venue is not specifically stated, the proper
county for the prosecution of offenses is that in which the offense was
committed.”  Tex. Code Crim. Proc. Ann. art. 13.18 (Vernon 2005).  Additionally, special venue statutes have
been enacted.  See Tex. Code Crim. Proc. Ann. arts.
13.01-13.30 (Vernon 2005 & Supp. 2006). 
These statutes are a “species of codified ‘substantial contacts’
jurisdiction; thus, for venue to lie, the defendant, his conduct, his victim,
or the fruits of his crime must have some relationship to the prosecuting county.”  Murphy v. State, 112 S.W.3d
592, 604 (Tex. Crim. App. 2003).  The
theft specific venue statute provides, “Where property is stolen in one county
and removed by the offender to another county, the offender may be prosecuted
either in the county where he took the property or in any other county through
or into which he may have removed the same.” 
Tex. Code Crim. Proc. Ann.
art. 13.08 (Vernon 2005).  A motion for
directed verdict specifically challenging the proof of venue timely raises and
preserves the issue for appeal.  Black
v. State, 645 S.W.2d 789, 791 (Tex. Crim. App. 1983). 

            Venue
in a criminal case need be proven only by a preponderance of the evidence.  Tex.
Code Crim. Proc. Ann. art. 13.17 (Vernon 2005);  Murphy, 112 S.W.3d at 604.  Proof of venue may be established by direct
or circumstantial evidence, and the jury may draw reasonable inferences from
the evidence.  Black, 645
S.W.2d at 790; Edwards v. State, 97 S.W.3d 279, 285 (Tex. App.–Houston
[14th Dist.] 2003, pet. ref’d).  The
evidence is sufficient if the jury may reasonably conclude that the offense was
committed in the county alleged.  Rippee
v. State, 384 S.W.2d 717, 718 (Tex. Crim. App. 1964).

Analysis – Intent

            This
case was tried in Smith County.  The
record shows that Appellant picked up the tires and rims in Smith County and
took them to Gregg County.  The State
argues that venue was proper in Smith County under Article 13.08, the theft
specific venue statute, because Appellant stole the property in Smith County
and moved it to Gregg County.  Appellant
asserts that, if a theft occurred, it occurred in Gregg County because the
evidence does not prove that he had the intent to steal at the time he removed
the property from Smith County. 
Following Appellant’s logic, venue was proper in Gregg County under the
general venue statute, Article 13.18.

            The
indictment alleged that, on or about April 2, 2003, Appellant unlawfully
appropriated Cheflin’s property in Smith County by acquiring or otherwise
exercising control over it, with the intent to deprive Cheflin of the
property.  The jury charge recited the
theft statute and defined, among others, the terms appropriate, deprive,
deception, effective consent, steal, and possession.  The charge also set out the theft specific
venue provision stating that when property is stolen in one county and removed
to another county, the offender may be prosecuted in the county where he took
the property or in any county through or into which he removed the
property.  The jury found Appellant
guilty as charged in the indictment.  

            A
person commits theft if he unlawfully appropriates property with intent to
deprive the owner of the property.  Tex. Pen. Code Ann. § 31.03(a) (Vernon
Supp. 2006).  Appropriation must be
accompanied by the specific intent to deprive the owner of property.  Mills v. State, 722 S.W.2d 411,
415 (Tex. Crim. App. 1986).  Accordingly,
appropriation is unlawful where the actor does not have the owner’s consent and
the actor knows he does not have the owner’s consent.  Id.  Article 13.08 applies to offenders who steal
the property of another person and remove that property from one county to
another.  Stewart v. State,
44 S.W.3d 582, 587 (Tex. Crim. App. 2001). 
Article 13.08 attaches venue at the point where the accused takes
control of the property with the requisite intent.  Id.  Therefore, to determine where venue is
appropriate, we must first determine if, at the time Appellant took the tires
and rims out of Smith County, on or about April 2, 2003, he did so with the
requisite intent.  See id.  

            Appellant
argues that he had Cheflin’s consent to take the tires and rims from Smith
County and therefore did not have the requisite intent at that time.  The State responds that, although Cheflin
agreed to allow Appellant to take the tires and rims pursuant to the oral
contract to rebuild the trailer, that consent was not effective because it was
induced by deception.  See Tex. Pen. Code Ann. § 31.01(3)(A)
(Vernon Supp. 2006)(Consent is not effective if induced by deception.).  The State argues that the following
circumstantial proof shows that Appellant used deception to obtain Cheflin’s
consent to remove the property and therefore had the requisite intent when he
picked up the tires in Smith County:  he
never returned the property; he sold the trailer, tires, and rims; he resisted
Cheflin’s requests to retrieve the property; after his arrest he said Green
stole the property; and he threatened his ex-girlfriend to keep her from
testifying.

            Appellant
took the tires to Gladewater shortly after he took the trailer to Gladewater,
possibly mid to late April 2003.  Both
sides agree Appellant had done some work on the trailer by then.  The tires were last seen by Green right after
Appellant took them to Gladewater. 
However, Linthicum saw them in Appellant’s possession at a much later
time.  She estimated the time for that
event at about one year before the trial, which would have been late August
2004.  Appellant testified that he took
the tires to his house for safekeeping and kept them there until at least
August 2004.  Until he was jailed in
September 2004, Appellant always said he had possession of the tires and had
them in a safe place.

            Certainly,
Linthicum’s testimony, the fact that Appellant never returned the tires,
Appellant’s threats against Linthicum, and the defense theory that Green stole
the tires all lead to the inference that Appellant stole the tires.  Undoubtedly, in order to do so, Appellant at
some point formed the intent to deprive Cheflin of his property.  But to show venue was proper in Smith County,
the State had to show that intent to deprive was present on the day Appellant
took the tires and rims from Smith County. 
A State’s witness placed Appellant in possession of the tires and
selling them more than a year after he took the tires out of Smith County.  It was also not until September 2004, a year
and a half after getting the trailer, that Appellant sold the trailer.  And while the jury was free to disbelieve the
defensive theory that Green stole the tires, the timing of the event Swanson
testified about coincides with Linthicum’s testimony about the approximate time
Appellant sold the tires.  From this, the
jury might reasonably infer that Appellant sold the tires in August or
September 2004.  Moreover, Appellant
explained that he had possession of the tires for seventeen months, rather than
eighteen months as the prosecution suggested, because they “got up and walked
off.”  In light of all this testimony, it
would be reasonable for the jury to believe Riggins, whose testimony placed the
tires in Appellant’s possession only until August 2003, was mistaken about the
year.  But even if he was not mistaken
about the year, his testimony does not support a finding that Appellant had the
requisite intent in April 2003.  

            None
of the evidence constitutes proof that Appellant had the intent to steal the
tires and rims on the day he took them from Green’s place of business in Smith
County around April 2003.  Even if
Cheflin’s testimony that Appellant called and asked for the tires is believed,
there is no evidence that Appellant did or said anything before he got the
tires or at the time he got the tires showing that he intended to do anything
other than put them on Cheflin’s trailer. 
Further, there is no circumstantial evidence from which the jury could
reasonably infer that Appellant had the requisite intent at the time he took
the tires and rims from Smith County. 
There is no evidence that Appellant used deception to obtain possession
of the tires.

            It
is not clear exactly when Green or Cheflin first asked Appellant to return the
tires and rims, a request he did not comply with.  However, even assuming it was at that point
that he formed the intent to steal, the record does not show when he removed
the tires from the trailer and hid them. 
The record does, however, show that it did not occur in Smith
County.  Because there is no evidence
that Appellant had formed the intent to deprive Cheflin of the tires and rims
at the time he took them from Green’s property in Smith County, venue was not
proper in Smith County.  See Tex. Pen. Code Ann. § 31.03(a); Stewart,
44 S.W.3d at 587.  Therefore, the trial
court erred in denying Appellant’s motion for directed verdict.  See Black, 645 S.W.2d at
791.

Harm Analysis 


            Historically,
the rule in Texas has been that, where venue has not been proven as alleged,
the conviction has been reversed and a judgment of acquittal rendered.  See Jones v. State, 979 S.W.2d
652, 659 (Tex. Crim. App. 1998); Black, 645 S.W.2d at 791.  Prior to September 1, 1997, the appellate
rule regarding reversible error in criminal cases stated that “[i]f the
appellate record in a criminal case reveals error in the proceedings below, the
appellate court shall reverse the judgment under review, unless the appellate
court determines beyond a reasonable doubt that the error made no contribution
to the conviction or to the punishment.” 
Tex. R. App. P. 81(b)(2)
(amended 1997).  Effective September 1,
1997, amended Texas Rules of Appellate Procedure were adopted.  Under the 1997 amendments, reversible error
in criminal cases was divided into two categories:  “constitutional errors” and “other errors.”  Tex.
R. App. P. 44.2 (a), (b).  The
only case that has directly analyzed the application of Rule 44.2(b) to venue
is State v. Blankenship, 170 S.W.3d 676, 682-83 (Tex. App.–Austin
2005, pet. ref’d).  In Blankenship,
the court noted that, due to the adoption of the harmless error analysis
provisions in the Texas Rules of Appellate Procedure, the failure to prove
venue when the issue is raised at trial is nonconstitutional error subject to
harm analysis.  Id.  Because venue is not a constitutional issue,
the “other errors” category is pertinent to the present case.  Garza v. State, 974 S.W.2d 251,
260-61 (Tex. App.–San Antonio 1998, pet. ref’d).  Rule 44.2(b), regarding nonconstitutional “other
errors,” states that “[a]ny other error, defect, irregularity, or variance that
does not affect substantial rights must be disregarded.”  Tex.
R. App. P. 44.2 (b).  Therefore,
we evaluate the harm of the nonconstitutional error on the basis of whether it
affected Appellant’s substantial rights. 
See Tex. R. App. P. 44.2(b). 
A substantial
right is affected when the error had a substantial and injurious effect or
influence in determining the jury’s verdict or the fact finder’s decision.  See King v. State, 953 S.W.2d
266, 271 (Tex. Crim. App. 1997); Blankenship, 170 S.W.3d at
683.  A criminal conviction should not be
overturned for nonconstitutional error if the reviewing court, after examining
the record as a whole, has a fair assurance that the error did not influence
the fact finder, or had slight effect.  Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  In assessing the likelihood that the jury’s
decision was adversely affected by the error, the appellate court should
consider everything in the record, including any testimony or physical evidence
admitted for the jury’s consideration, the nature of the evidence supporting
the verdict, the character of the alleged error, and how it might be considered
in connection with other evidence in the case. 
Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App.
2002).  The reviewing court may also
consider the jury instructions, the State’s theory and any defensive theories,
closing arguments, voir dire, and whether the State emphasized the error.  Id. at 355-56.  

            Thus,
we consider whether this error affected Appellant’s substantial rights.  The error was the failure to prove venue in
the county alleged.  The issue of venue
concerns only the geographic location where the case may be tried.  Boyle v. State, 820 S.W.2d 122,
139-40 (Tex. Crim. App. 1989).  Venue is
not synonymous with jurisdiction, which is the power of the court to hear and
decide the case.  Fairfield v.
State, 610 S.W.2d 771, 779 (Tex. Crim. App. 1981).  The trial court had jurisdiction to hear and
determine the case even though venue does not lie in that court.  Id.

            The
indictment was handed down by a Smith County grand jury and alleged that the
offense occurred in Smith County. There is no indication that the State was
forum shopping or that Appellant was inconvenienced by having the trial in
Smith County rather than neighboring Gregg County.  Appellant had notice he would be tried in
Smith County.  There is no indication in
the record that Appellant was misled by the venue allegation.  There is no showing that he was prevented
from presenting a defense because of the venue allegation.  There is no suggestion that the Smith County
jury was anything but impartial.  See
Tex. Code Crim. Proc. Ann. art.
31.03 (Vernon 2006) (When there is so great a prejudice against the defendant
in the county where prosecution is commenced, the trial court may order a change
of venue.).  Venue rules are intended to
ensure that jurors have a natural interest in the case because it touched their
community.  George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 2.02
(2001).  The reasonableness of the choice
of venue is in part determined by whether the criminal acts in question bear “substantial
contacts” with that venue.  See Soliz
v. State, 97 S.W.3d 137, 143 (Tex. Crim. App. 2003).  Here, the property was initially located in
Smith County and the complainant’s agent is a Smith County resident. 

            Since
venue is not an element of the offense, the error did not prejudice the jurors’
decision making process.  They were still
able to properly apply the law to the facts finding proof of all elements of
theft to reach a verdict of guilty.  See
Motilla, 78 S.W.3d at 355. 
Further, the legislature has specified a number of instances where
prosecution is allowed in a county other than where the offense occurred.  See Tex.
Code Crim. Proc. Ann. arts. 13.01 (offenses committed outside the
State), 13.04 (offenses committed on boundaries of counties), 13.10 (offenses
committed outside this State by persons acting under authority of the State),
13.11 (offenses committed on board a vessel), 13.12 (false imprisonment and
kidnapping), 13.19 (where venue cannot be determined).  Nothing in the record indicates that the
State was intentionally attempting to taint the trial process, and the State
did not emphasize the error.  Moreover,
nothing in the record indicates that holding the error harmless will encourage
the State to repeat it.

            Further,
the issue of venue is a procedural matter, not an element of the offense
alleged, and falls outside the protection of the Double Jeopardy Clause.  See Martin v. State, 385
S.W.2d 260, 261 (Tex. Crim. App. 1964) (op. on reh’g); Blankenship,
170 S.W.3d at 684; O’Hara v. State, 837 S.W.2d 139, 142 (Tex.
App.–Austin 1992, pet. ref’d).  If we
reversed for failure to prove venue as alleged, no prohibition exists against
reprosecution.  See Martin,
385 S.W.2d at 261; Blankenship, 170 S.W.3d at 684.  Consideration of the record as a whole gives
us fair assurance that the error did not influence the jury.  See Motilla, 78 S.W.3d at 355;
Blankenship, 170 S.W.3d at 684. 
We conclude that the nonconstitutional error of failing to prove venue
in Smith County as alleged is harmless. 
Nothing in the record indicates that the results would have been
different had the case been tried in Gregg County.  We overrule Appellant’s first issue.

 

 

Sufficiency
of the Evidence

            In
his second issue, Appellant contends the evidence is factually insufficient to
support the jury’s verdict of guilty.  He
argues that this is a breach of contract case, not a theft case.  He asserts that Cheflin filed a criminal
complaint only to get Appellant to return the tires and that Appellant did not
have the intent to deprive Cheflin of his property, but was merely trying to
get paid for his work on the trailer. 
Further, he contends there is no evidence that he obtained Cheflin’s
consent to take the tires by deception as asserted by the State.

Standard of Review

            Under
a factual sufficiency standard, the court conducts a neutral review of all the
evidence and will set the verdict aside only if the evidence is so weak that
the verdict is clearly wrong and unjust, or the contrary evidence is so strong
that the “beyond a reasonable doubt” standard of proof could not have been
met.  Russeau v. State, 171
S.W.3d 871, 878 (Tex. Crim. App. 2005), cert. denied, 126 S. Ct.
2982 (2006).  A clearly wrong and unjust
verdict occurs when the jury’s finding “shocks the conscience” or “clearly
demonstrates bias.”  Id.  The reviewing court compares the evidence
that tends to prove a material disputed fact with evidence that tends to disprove
it.  Johnson v. State, 23
S.W.3d 1, 7 (Tex. Crim. App. 2000).  A
reviewing court must be appropriately deferential so as to avoid substituting
its own judgment for that of the fact finder. 
Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).  The reviewing court should not substantially
intrude upon the jury’s role as the sole judge of the weight and credibility of
witness testimony.  Id. 

            A person commits theft if he unlawfully appropriates
property with intent to deprive the owner of the property.  Tex.
Pen. Code Ann. § 31.03(a). 
Appropriation of property is unlawful if it is without the owner’s
effective consent.  Tex. Pen. Code Ann. § 31.03(b)(1)
(Vernon Supp. 2006).  “Deception” can
involve “creating or confirming by words or conduct a false impression of law
or fact that is likely to affect the judgment of another in the transaction,
and that the actor does not believe to be true.”  Tex.
Pen. Code Ann. § 31.01(1)(A) (Vernon Supp. 2006).  Appropriation must be accompanied by the
specific intent to deprive the owner of property.  Mills, 722 S.W.2d at 415.  Intent may be inferred by the jury.  See Jones, 944 S.W.2d at 647.

Analysis

            The
evidence shows that, in April 2003, the parties had an oral agreement for
Appellant to rebuild a trailer and mount new tires on it.  Appellant took the trailer and later the
tires to Gregg County where his equipment was located.  He actually did some work on the trailer, but
did not complete the work.  After a year
and a half, he filed a “labor lien” on the trailer and attempted to sell it to
recoup his losses.  Green told Appellant
that Cheflin wanted the tires back.  The
State’s evidence showed that Appellant possessed the tires for almost a year
and a half and said he would bring them back but never did.  Linthicum testified that Appellant said he was
going to sell the tires.  The tires then
disappeared and were never returned to Cheflin. 
The jury could have chosen not to believe Appellant’s version of the
events.  See id. at
648.  While we agree with Appellant that
there is no evidence that he deceived Cheflin to gain possession of the tires,
this is inapposite.  The jury could have
inferred from the evidence that Appellant had the requisite intent to steal the
tires and rims after he took possession of them.  See id. at 647.  The evidence of guilt is not so weak that the
verdict is clearly wrong and unjust.  See
Russeau, 171 S.W.3d at 878.

            The
defense testimony implied that, while the tires and rims were apparently
stolen, they were stolen by someone else, possibly Green.  Appellant testified that he would have given
the tires back to Green if he had been paid for his work.  This evidence is not so strong that the
standard of proof could not have been met. 
See id.  Further,
the jury was entitled to disregard it.  See
Jones, 944 S.W.2d at 648.  We
overrule Appellant’s second issue.

 


Disposition

            Having
overruled Appellant’s two issues, we affirm the trial court’s
judgment.

                                                                                    

 

                                                                                                    BRIAN HOYLE   

                                                                                                               Justice

 

Opinion
delivered December 20, 2006.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

(PUBLISH)











[1]
The indictment identifies the owner as Chris Shufflin while the reporter’s
record and the parties refer to him as Chris Cheflin.





[2] The City of Gladewater is located in Gregg and
Upshur Counties, but the property rented by Appellant is in Gregg County.





[3] The record is not clear as to whether he was
referring to his arrest for the theft of the trailer or the tires, or whether
he was arrested for both at the same time. 
He was not tried for the theft of the trailer at the same time that he
was tried for the theft of the tires.