

# IN THE
## TENTH COURT OF APPEALS

### No. 10-19-00119-CR

**DAVID JOEL WESTBROOK,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 413th District Court
Johnson County, Texas
Trial Court No. F50608**

## MEMORANDUM  OPINION

A jury found Appellant David Joel Westbrook guilty of two counts of aggravated sexual assault of a child and four counts of indecency with a child by sexual contact. The jury found an enhancement paragraph true and sentenced Westbrook to life in prison on Counts One and Two and to seventy-five years in prison on Counts Three through Six. The sentences were ordered to be served consecutively. Westbrook challenges his convictions in ten issues. We will affirm.

## *Background*

Westbrook is the biological father of M.W. Westbrook and M.W.'s mother never married, although they lived together on and off between separate stints of incarceration. Westbrook was incarcerated when M.W. was born, was released, and was re-incarcerated when M.S. was approximately four years old. When Westbrook was released from prison in August of 2014, he moved in with M.W. and her mother in a house in Cleburne. In February 2015, the family moved to a house in Rio Vista. In April 2015, M.W.'s mother left Westbrook and moved with M.W. to Mount Pleasant. Subsequently, the Department of Family and Protective Services removed M.W. and her sibling from their mother's custody, eventually terminating the mother's parental rights. M.W. met with a therapist on February 5, 2016 and made an outcry of sexual abuse against Westbrook. M.W. reported that the abuse began after Westbrook was released from prison when she was four years old, halted when Westbrook was re-incarcerated, and resumed when she was six or seven years old after Westbrook was once again released from prison.

Westbrook was arrested on August 3, 2016. Westbrook went to trial on December 10, 2018, which ended with a mistrial. A second jury trial commenced on January 14, 2019. Westbrook timely filed a Motion for New Trial and Motion in Arrest of Judgment. Both motions were denied by the trial court. Westbrook remained in custody from the time of his arrest until the judgments were signed on January 18, 2019.

## *Issues*

Westbrook presents the following issues:

(1)    Whether the trial court violated his constitutional right to a speedy trial.

(2) – (7)    Whether there was legally sufficient evidence to support his convictions.

(8)    Whether the trial court erred by overruling his motion for instructed verdict.

(9) – (10)    Whether the trial court erred by admitting witness testimony and exhibits.

## *Discussion*

A.  Speedy Trial.  In his first issue, Westbrook asserts that the twenty-nine-month delay between his arrest and sentencing violated his rights under the United States Constitution and the Texas Constitution to a speedy trial.  Westbrook argues that all of the delays but one were caused by "the State, an overcrowded docket or no reason shown in the record."  Westbrook filed one motion for continuance on March 15, 2018.

> The Sixth Amendment guarantees a defendant in a criminal prosecution the right to a speedy trial.  "The speedy-trial right is amorphous, slippery, and necessarily relative."  Rejecting inflexible approaches, the Supreme Court has established a balancing test "in which the conduct of both the prosecution and the defendant are weighed."  Courts are to consider the length of delay, the reasons for delay, to what extent the defendant has asserted his right, and any prejudice suffered by the defendant.

> The length of delay is a double inquiry:  A court must consider whether the delay is sufficiently long to even trigger a further analysis under the *Barker* factors, and if it is, then the court must consider to what extent it stretches beyond this triggering length.  In assessing the reasons for delay, a court must accord different weights to different reasons, and it must ask "whether the government or the criminal defendant is more to blame for the delay."  Deliberate delay to hamper the defense is weighed heavily against the government while more neutral reasons such as negligence or overcrowded courts weigh against the government but less heavily.  Delay caused by the defense weighs against the defendant.  A

defendant has a responsibility to assert his right to a speedy trial. Although a defendant's failure to assert his right is not automatically fatal to a speedy-trial claim, a failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial. The prejudice factor should be assessed in light of the interests the right to a speedy trial was designed to protect: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. Affirmative proof of particularized prejudice is not essential to every speedy trial claim because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify . . . and its importance increases with the length of delay."

*Hopper v. State*, 520 S.W.3d 915, 923–24 (Tex. Crim. App. 2017) (footnoted citations omitted).

The Texas Constitution likewise provides the accused the right to a speedy trial. TEX. CONST. art. 1, § 10. The Court of Criminal Appeals has traditionally analyzed the denial of a speedy trial under state law using the factors outlined in federal law. *See Deeb v. State*, 815 S.W.2d 692, 704 (Tex. Crim. App. 1991); *see also State v. Wei*, 447 S.W.3d 549, 553 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). Westbrook makes no argument that his rights under state law differ from those under federal law.

We review a trial court's ruling on a speedy trial claim under a bifurcated standard. *Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008). Legal issues are reviewed *de novo* while factual findings are reviewed for an abuse of discretion. *Id*. If a violation of a defendant's right to a speedy trial is established, the only possible remedy is dismissal of the prosecution. *See Betterman v. Montana*, 578 U.S. 968, ___, 136 S.Ct. 1609, 1615, 194 L.Ed.2d 723 (2016) (citing *Strunk v. United States*, 412 U.S. 434, 440, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973)); *see also Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).

Generally, "delay approaching one year is sufficient to trigger a speedy trial inquiry." *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003) (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)). The delay "clock" continues to run even after a defendant's request for a mistrial is granted and a new trial is conducted. *See State v. Manley*, 220 S.W.3d 116, 122 (Tex. App.—Waco 2007, no pet.) (citing *Doggett*, 505 U.S. at 647).

Westbrook identifies nothing from the delay that impaired his defense or caused him to suffer more than generalized anxiety or concern, particularly in light of his previous terms of incarceration. Additionally, shortly after his arrest in this case, Westbrook was sentenced to a five-year term of incarceration in the Texas Department of Criminal Justice—Correctional Institutions Division after his ten-year term of probation was revoked. While Westbrook was awaiting trial in this case, he would have been incarcerated anyway as the result of the revocation. Westbrook does not argue that his incarceration in the county jail was more onerous than would have been his incarceration in TDCJ.

The strength of the evidence against Westbrook is significant and clearly sufficient, as will be more fully discussed in Appellant's issues two through seven challenging the sufficiency of the evidence. Westbrook was unable in this issue to direct the Court to anything to suggest a problem caused by the three-year delay in presenting the case or his defense. After our review of the entire record, we find nothing that causes us to question the reliability of Westbrook's trial due to the three-year delay in proceeding to trial. We overrule Issue One.

B. Sufficiency. In Issues Two through Seven, Westbrook asserts there was insufficient evidence to support his convictions. In Issue Eight, Westbrook asserts that the trial court erred in overruling his motion for an instructed verdict. A complaint regarding the overruling of a motion for instructed verdict is reviewed under a sufficiency analysis. *Atnipp v. State*, 517 S.W.3d 379, 386 (Tex. App.—Eastland 2017, pet. ref'd); *see also Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990) ("A challenge to the trial judge's ruling on a motion for an instructed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction."). We will address Issue Eight as it relates to the sufficiency of the evidence in conjunction with Issues Two through Seven.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (*citing Jackson*, 443 U.S. at 319, 99 S.Ct. 2781); *see*

*also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018). In determining sufficiency, we look at all the evidence in the record, including inadmissible evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013).

1.  Aggravated Sexual Assault of a Child. The indictment charged that Westbrook intentionally and knowingly caused the sexual organ of M.W. to contact his sexual organ on or about March 1, 2014 (Count One) and on or about February 26, 2015 (Count Two).

The elements of aggravated sexual assault of a child are found in § 22.021 of the Penal Code. *See* TEX. PENAL CODE ANN. § 22.021. As relevant to this case, a person

commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the sexual organ of a child to contact the sexual organ of another person, including the actor, and the victim is younger than fourteen years of age. *Id*. §§ 22.021(a)(1)(B)(iii), (a)(2)(B). Westbrook does not contest that M.W. was younger than fourteen years of age on the dates charged in the indictment.

At trial, M.W., who was then eleven years old, testified that one of the reasons the Department had removed her from her mother's custody was because Westbrook had "raped" her. M.W. denied, however, that there was penis-to-vagina contact between her and Westbrook or that she ever told anyone that had occurred. The therapist to whom M.W. first made an outcry of sexual abuse by Westbrook testified that M.W. told him that Westbrook penetrated her vagina with his penis. M.W. told the therapist that the first vaginal penetration occurred when she was four years of age and that the vaginal penetration "spiked" when she was approximately eight years of age. M.W. told the therapist that she thought she lived in Cleburne with her father during that time.

The SANE nurse who examined M.W. testified that M.W. told her that Westbrook touched her vagina with his penis, that the abuse began when she was four years old, and that the abuse occurred multiple times. The SANE nurse also testified that M.W. displayed rapid anal dilation that could indicate chronic sexual abuse. The SANE nurse further testified that the appearance of M.W.'s hymen was consistent with what M.W. said had happened to her. M.W. made a number of drawings during her examination by the SANE nurse. These drawings include depictions of genital-to-genital contact between M.W. and Westbrook, with Westbrook smiling.

The forensic interviewer testified that M.W.'s demeanor during the interview changed dramatically once their discussion turned to inappropriate touching, that M.W. was reluctant to talk about the abuse, that M.W.'s reluctance to discuss sexual acts and/or sexual organs was common for children that have been sexually abused, and that M.W.'s knowledge of sexual matters was not age-appropriate.

Westbrook argues that the events M.W. recounted to the therapist were dreams. To the extent M.W.'s testimony was inconsistent and/or vague regarding the details surrounding the offenses charged in Counts One and Two, this concerned her credibility as a witness. "The law recognizes the limitations of child witnesses and does not expect them to recount events that occurred when they were children with the same level of clarity and precision as adults." *Carmona v. State*, 610 S.W.3d 611, 616 (Tex. App.—Houston [14th Dist.] 2020, no pet.). The jury could have found the testimony of the other witnesses regarding the genital-to-genital contact between Westbrook and M.W. more credible than the testimony of M.W. As noted, the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the testimony, and we presume that the jury resolved any conflicting inferences from the evidence in favor of the verdict. *Zuniga*, 551 S.W.3d at 733.

Westbrook additionally argues that the State's evidence was insufficient to prove that he knowingly or intentionally committed the offenses. A defendant's intent may be inferred from a defendant's conduct and all surrounding circumstances. *Cervantes v. State*, 594 S.W.3d 667, 673 (Tex. App.—Waco 2019, no pet.). An oral expression of intent is not required, and a defendant's conduct alone is sufficient to infer intent. *Id.* (citing

*Abbott v. State*, 196 S.W.3d 334, 340 (Tex. App.—Waco 2006, pet. ref'd)). The jury could infer from the evidence that Westbrook intended the genital-to-genital contact with M.W. There is certainly nothing in the record to indicate that any genital-to-genital contact between Westbrook and M.W. was accidental.

Under the applicable standard of review, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Westbrook intentionally or knowingly committed aggravated sexual assault of M.W. as charged in Counts One and Two. We overrule Issues Two and Three.

2. Indecency with a Child by Sexual Contact. The indictment charged: (1) Westbrook touched the genitals of M.W. with the intent to arouse or gratify his sexual desire on April 1, 2014 (Count Three) and February 27, 2015 (Count Five); and (2) Westbrook caused M.W. to touch his genitals with the intent to arouse or gratify his sexual desires on or about May 1, 2014 (Count Four) and on or about February 27, 2015 (Count Six). A person commits the offense of indecency with a child by sexual contact if the person intentionally or knowingly engages in sexual contact with a child younger than seventeen years of age or causes the child to engage in sexual contact. *Id*. at § 21.11(a)(1). "Sexual contact," as relevant to the charges in this case, includes the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) touching through clothing of any part of the genitals of a child, and (2) touching any part of the body of a child with any part of the genitals of a person. *See id*. § 21.11(c); *see also Carmona*, 610 S.W.3d at 615. Westbrook argues the State failed to prove that he touched

M.W.'s genitals and that he had M.W. touch his genitals with the intent to arouse or gratify his sexual desire.

M.W. testified regarding several incidents where Westbrook touched her vagina: on the couch in the Cleburne house, in her bedroom in the Cleburne house, and in a bedroom in the Rio Vista house. M.W. testified that during incidents in both Cleburne and Rio Vista, Westbrook said, to the effect, since M.W.'s mom was not available, he'd have to use M.W. M.W.'s mother testified that she saw Westbrook with his hand on M.W.'s vaginal area while they were living at the Cleburne house. The therapist and SANE nurse testified that M.W. told them that Westbrook inappropriately touched her vagina on numerous occasions.

M.W. additionally testified that Westbrook had her touch his penis on numerous occasions while they were living at the Cleburne house and at the Rio Vista house. The SANE nurse testified that M.W. told her that Westbrook had M.W. touch his penis and that Westbrook would have M.S. "hump" him. The SANE nurse further testified that M.S. told her that Westbrook told M.W. he loved it when M.W. touched his penis. The therapist testified that M.W. told him that Westbrook would cause M.W. to use her hands to ejaculate his penis.

M.W. also identified drawings she made of the abuse. M.W. testified that the drawings showed Westbrook smiling while M.W. was touching Westbrook's genitals and while he was touching M.W.'s genitals. M.W. testified about an incident that occurred in Rio Vista where her father tried to justify his actions to M.W.'s mother by blaming M.W. That event was corroborated by Westbrook's brother, who was living with them at the

time.  It was after this incident that M.W.'s mother left Westbrook and moved to Mount Pleasant.  M.W. also testified that both her mother and Westbrook told her not to tell anyone about the abuse.

"A child victim's testimony alone is sufficient to support a conviction for aggravated sexual assault of a child or indecency with a child."  *Keller v. State*, 604 S.W.3d 214, 226 (Tex. App.—Dallas 2020, pet. ref'd); *Chasco v. State*, 568 S.W.3d 254, 258 (Tex. App.—Amarillo 2019, pet. ref'd); *see also* TEX. CODE CRIM. PROC. art. 38.07(a), (b).  The intent to arouse or gratify a defendant's sexual desire may be inferred from "a defendant's conduct, remarks, and all the surrounding circumstances."  *Keller*, 604 S.W.3d at 226; *Cervantes*, 594 S.W.3d at 673.  "No oral expression of intent or visible evidence of sexual arousal is necessary."  *Keller*, 604 S.W.3d at 226.

Under the applicable standard of review, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Westbrook intentionally or knowingly engaged in sexual contact with a child and caused a child to engage in sexual contact all with the intent to arouse or gratify his sexual desire on or about the dates charged in Counts Three through Six of the indictment.  We overrule Issues Four, Five, Six, and Seven.  We also overrule Issue Eight as it relates to the sufficiency of the evidence to support the elements of the offenses charged in the indictment.

C.  Venue.  In Issue Eight, Westbrook also argues that the trial court erred in denying his motion for an instructed verdict because the State failed to prove that the offenses took place in Johnson County.

The evidence reflected that Westbrook's address in Rio Vista was 717 HCR 1123 which is located in Hill County. The State established that the driveway to the residence was located within four hundred yards of Johnson County. Westbrook argues this is insufficient because the State failed to prove that any of the charged offenses occurred within four hundred yards of the county line.

Chapter 13 of the Code of Criminal Procedure requires the State to prove that the prosecution is brought in the proper venue. TEX. CODE CRIM. PROC. ANN. art. 13.17. However, venue is not an element of any of the offenses charged. *See Schmutz v. State*, 440 S.W.3d 29, 34 (Tex. Crim. App. 2014) ("As it is not a 'criminative fact,' venue is not an 'element of the offense' under Texas law."). Venue merely means "the county or district in which a court with jurisdiction may hear and determine a case." *Soliz v. State*, 97 S.W.3d 137, 141 (Tex. Crim. App. 2003).

The general venue provision of Chapter 13 provides that venue is proper in the county in which an offense was committed. TEX. CODE CRIM. PROC. ANN. art. 13.18. Other provisions of Chapter 13 expand the counties in which an offense may be prosecuted, including article 13.04 which provides, in pertinent part: "An offense committed on the boundaries of two or more counties, or within four hundred yards thereof, may be prosecuted and punished in any one of such counties. . . ." *Id.* at art. 13.04.

The State need only prove venue by a preponderance of the evidence. *Id.* at art. 13.17; *see also Murphy v. State*, 112 S.W.3d 592, 604 (Tex. Crim. App. 2003). As with the elements of an offense, venue may be proven by direct or circumstantial evidence, and the jury may draw reasonable inferences from the evidence to decide the issue of venue.

*Thompson v. State*, 244 S.W.3d 357, 362 (Tex. App.—Tyler 2006, pet. dism'd). "When reviewing whether there is legally sufficient evidence of venue, 'we view all the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found venue was proper by a preponderance of the evidence.'" *Dewalt v. State*, 307 S.W.3d 437, 457 (Tex. App.—Austin 2010, pet. ref'd) (quoting *Gabriel v. State*, 290 S.W.3d 426, 435 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). "The evidence is sufficient if the jury may reasonably conclude that the offense was committed in the county alleged." *Thompson*, 244 S.W.3d at 362.

An investigator with the Johnson County District Attorney's Office testified that the distance between the Rio Vista house and the Hill-Johnson County line was less than 400 yards. This was sufficient for the jury to reasonably conclude that the offenses charged in the indictment were committed in Johnson County.

Even if there is error in the State's proof regarding venue, it is a non-constitutional error that must be disregarded if it does not affect a defendant's substantial rights. *Schmutz*, 440 S.W.3d at 39 (citing TEX. R. APP. P. 44.2(b)); *see also State v. Blankenship*, 170 S.W.3d 676, 682-84 (Tex. App.—Austin 2005, pet. ref'd). A criminal conviction should not be overturned for non-constitutional error if, after examining the record, this Court has assurance that the error did not influence the jury or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

There is no evidence that the State gained any advantage or that Westbrook suffered any disadvantage because the offenses were tried in Johnson County. *See Blankenship*, 170 S.W.3d at 684.

"There is no evidence that the State was forum shopping or that Appellant was inconvenienced by having the trial in [Johnson] County rather than neighboring [Hill] County. Appellant had notice he would be tried in [Johnson County]. There is no indication in the record that Appellant was misled by the venue allegation. There is no showing that he was prevented from presenting a defense because of the venue allegation. There is no suggestion that the [Johnson] County jury was anything but impartial."

*Thompson*, 244 S.W.3d at 365-66.

After considering the entire record, we conclude that the jury's verdicts were not adversely affected by any possible error related to venue. We overrule Issue Eight as it relates to venue.

D. Witness Testimony and Exhibits. Westbrook argues in Issues Nine and Ten that the trial court erred in admitting witnesses and exhibits. Specifically, in Issue Nine, Westbrook argues that the trial court erred by designating the forensic interviewer as the outcry witness for Counts One, Two, Four and Six and by admitting State's Exhibit 14, the video of the interview with M.W. In Issue Ten, Westbrook argues that the trial court erred in admitting the testimony of the SANE nurse regarding her report and admitting the report itself as Exhibit 15.

1. Outcry Witness and Exhibit 14. "We review the trial court's designation of an outcry witness under an abuse-of-discretion standard." *Cervantes*, 594 S.W.3d at 673.

A trial court's designation of an outcry witness will be upheld when supported by the evidence. A trial court abuses its discretion when its ruling is outside the zone of reasonable disagreement. Absent a clear abuse of discretion, a reviewing court will not disturb the trial court's ruling.

*Id*. (citations omitted).

Texas Code of Criminal Procedure Article 38.072 provides that some hearsay statements of a child under the age of 14 or person with a disability are admissible in prosecuting certain offenses [under Chapters 21 and 22]. TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2018). The statute applies to "statements that describe the alleged offense" and that (1) were made by the child against whom the offense allegedly was committed and (2) were made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2018); *Polk v. State*, 367 S.W.3d [449] at 453 [(Tex. App.—Houston [14th Dist.] 2012, pet. ref'd)]. The statute has been construed to apply to the first adult to whom the complainant makes a statement that in "some discernible manner describes the alleged offense." *Id*. Outcry testimony is specific to an event instead of "person-specific." *Id*. More than one outcry witness may testify when the outcry statements are about differing events and not a repetition of the same events. *Id*.

*Id*.

M.W. met with the forensic interviewer on February 9, 2016 and discussed two incidents of sexual abuse: (1) while living in the Cleburne house, Westbrook touched M.W.'s vagina with his hand; and (2) while living in the Rio Vista house, Westbrook touched her vagina with his hand. M.W. told the forensic interviewer that Westbrook did "things" to her twelve times.

The State filed outcry notices naming both the therapist and the forensic interviewer. After a hearing, the trial court ruled that the forensic interviewer would be the outcry witness for all events other than the March 2015 incident for which the therapist would be the outcry witness. The State linked the March 2015 incident to Count Five.

As to the events described in Count Three, the forensic interviewer testified at the art. 38.072 hearing that M.W. told her that Westbrook touched her vagina with his hand

and that it occurred when they lived in Cleburne. M.W. told the forensic interviewer that this occurred when she was seven years old, that she was in bed when it occurred, that it happened at night, and that her mother had gone to visit a friend. M.W.'s statement described the events charged in Count Three with sufficient detail to make the forensic interviewer the proper outcry witness for this event.

The State concedes that the trial court erred by designating the forensic interviewer as the outcry witness for the events associated with Counts One, Two, Four, and Six. M.W. did not tell the forensic interviewer that Westbrook penetrated her vagina with his penis or that Westbrook had M.W. touch his penis with her hand. The State argues, however, that this constituted harmless error because sufficient evidence regarding those occurrences came from M.W., the therapist, and the SANE nurse.

"The improper admission of hearsay testimony under article 38.072 is nonconstitutional error that is harmless unless the error affected the appellant's substantial rights." *Merrit v. State*, 529 S.W.3d 549, 556 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). As previously noted, an error is harmless if we are reasonably assured that the error did not influence the jury's verdict or had only a slight effect. *Johnson*, 967 S.W.2d at 417. "Likewise, the improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial." *Merrit*, 529 S.W.3d at 556. The testimony of M.W., the therapist, and the SANE nurse was sufficient to support Westbrook's convictions in Counts One, Two, Four, and Six. Therefore, any statements made by the forensic interviewer alluding to the allegations

contained in Counts One, Two, Four, and Six, if any, was harmless error. We overrule Issue Nine.

2. Testimony Regarding Exhibit 15. We review a trial court's evidentiary decisions for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); *see also Lumsden v. State*, 564 S.W.3d 858, 880 (Tex. App.—Fort Worth 2018, pet. ref'd). "Under an abuse of discretion standard, an appellate court should not disturb the trial court's decision if the ruling was within the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008). "[A]n evidentiary ruling . . . will be upheld on appeal if it is correct on any theory of law that finds support in the record." *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1024, 127 S.Ct. 564, 166 L.Ed.2d 418 (2006).

The State offered the SANE nurse as an expert witness on sexual-assault examination. Westbrook objected that the SANE nurse's testimony would not meet the hearsay exception for medical diagnosis because the examination was performed solely for law-enforcement purposes. The trial court overruled Westbrook's objection. The State then showed Exhibit Number 15 to the SANE nurse. Westbrook again objected to the SANE nurse's anticipated testimony concerning the contents of the medical record, but acknowledged that M.W.'s drawings, which were part of the report, had already been admitted into evidence. The trial court again overruled Westbrook's objection.

Generally, hearsay is not admissible unless permitted by statute, the rules of evidence, or by some other rule "prescribed under statutory authority." TEX. R. EVID. 802. Once a hearsay objection is made, the proponent of the evidence must establish an

exception that would make the evidence admissible despite its hearsay character. *Taylor v. State*, 268 S.W.3d 571, 578-79 (Tex. Crim. App. 2008). Rule 803(4) provides that statements made for the purpose of medical diagnosis or treatment are an exception to the hearsay rule. TEX. R. EVID. 803(4). A statement is not hearsay if it "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." *Id.*

> A proponent of a statement made for the purpose of medical diagnosis or treatment has the burden to show that the "declarant was aware that the statements were made for that purpose and that 'proper diagnosis or treatment depends upon the veracity of such statements.'" *Taylor*, 268 S.W.3d at 589 (quoting *Jones v. State*, 92 S.W.3d 619, 623 (Tex. App.—Austin 2002, no pet.)); *Prieto v. State*, 337 S.W.3d 918, 921 (Tex. App.—Amarillo 2011, pet. ref'd). In addition, the proponent must show that the particular statement is "pertinent to diagnosis or treatment." *See* TEX. R. EVID. 803(4), 60 Tex. B.J. 1129, 1149 (1997); *see also Taylor*, 268 S.W.3d at 591; *Prieto*, 337 S.W.3d at 921.

> We look to the entire record to determine whether a child understands the importance of being truthful when being questioned by medical personnel. *Franklin* [*v. State*], 459 S.W.3d [670] at 676–77 [Tex. App.—Texarkana 2015, pet. ref'd)]; *see Beheler v. State*, 3 S.W.3d 182, 188–89 (Tex. App.—Fort Worth 1999, pet. ref'd). An express statement that the child understood the need to be truthful is not required. *Beheler*, 3 S.W.3d at 188. Rather, as the Texas Court of Criminal Appeals has stated, "[I]t seems only natural to presume that adults, and even children of a sufficient age or apparent maturity, will have an implicit awareness that the [medical personnel]'s questions are designed to elicit accurate information and that veracity will serve their best interest." *Taylor*, 268 S.W.3d at 589. In addition, it is reasonable to assume that a child of sufficient age understands that statements made to a recognized medical professional, such as a physician or nurse, are "made for the purpose of medical diagnosis and treatment." *Gohring v. State*, 967 S.W.2d 459, 463 (Tex. App.—Beaumont 1998, no pet.). As this Court recently held, "[C]ourts can infer from the record that the victim knew it was important to tell a SANE the

truth in order to obtain medical treatment or diagnosis." *Franklin*, 459 S.W.3d at 677 (citing *Prieto*, 337 S.W.3d at 921).

*Fahrni v. State*, 473 S.W.3d 486, 497–98 (Tex. App.--Texarkana 2015, pet. ref'd).

The SANE nurse testified that M.W. was eight years old at the time of the examination and that she explained to M.W. the purpose of the visit — a medical examination. The SANE nurse explained who she was, what she was, and what she does. The SANE nurse then obtained a medical history from M.W. and asked her if she knew why she was there. M.W. then described incidents when Westbrook touched her sexually and had her touch him sexually and drew pictures indicating genital-to-genital and hand-to-genital contact. The SANE nurse testified that M.W. preferred to draw what had happened to her rather than telling her what had occurred.

There is nothing in the record that would lead us to conclude that M.W. was unaware that the purpose of the SANE nurse's questions was to provide medical treatment or diagnosis or that she was unaware of the necessity to be truthful. *See Taylor*, 268 S.W.3d at 589. On this record, we conclude that it is at least within the zone of reasonable disagreement that the history was taken for the purpose of medical treatment or diagnosis, and the trial court did not abuse its discretion in admitting State's Exhibit 15 and/or the SANE nurse's testimony concerning its contents. We overrule Issue Ten.

### *Conclusion*

Having overruled all of Westbrook's issues, we affirm the judgment of the trial court.

MATT JOHNSON
Justice

Before Chief Justice Gray,
        Justice Johnson, and
        Justice Rose[1]
Affirmed
Opinion delivered and filed August 25, 2021
Do not publish
[CRPM]



---

[1] The Honorable Jeff Rose, Former Chief Justice of the Third Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.