

# NUMBER 13-20-00142-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JIMMY PORTER,                                                                      Appellant,

v.

THE STATE OF TEXAS,                                                              Appellee.

## On appeal from the 36th District Court
## of San Patricio County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Silva**
**Memorandum Opinion by Justice Benavides**

By two issues, appellant Jimmy Porter appeals his convictions for aggravated robbery, a first-degree felony, and unlawful possession of a firearm by a felon, a third-degree felony.[1] *See* TEX. PENAL CODE ANN. §§ 29.03, 46.04(e). Porter argues that the

---

[1] Porter was also charged in Count Three with possession of a controlled substance, but the State dismissed that charge prior to trial. *See* TEX. HEALTH & SAFETY CODE ANN. § 411.115(c).

evidence was insufficient to support his convictions, and his trial counsel was ineffective for failing to request a directed verdict. We affirm.

## I.  BACKGROUND

On August 30, 2019, Aransas Pass Police were called to the local Sonic restaurant around 7:15 p.m. in regard to an aggravated robbery. Upon arrival, Officer Jessica Dougherty made contact with Sara Lynda Ortiz, the complainant, who described to Officer Dougherty what had occurred. Officer Dougherty testified that Ortiz was visibly shaken and told her that a customer had shown her a gun and taken her money while she was delivering an order of food. Officer Dougherty reviewed the surveillance video and identified a silver Mazda hatchback leaving the Sonic, even though Ortiz had described the vehicle as tan or gold in color. Officer Dougherty later responded to the City of Rockport, where a vehicle matching the description of the one involved in the offense at Sonic was located, but she left shortly thereafter because she did not have jurisdiction in Rockport.

Ortiz testified that her day was a "regular day" until she took an order out to stall seventeen. She said the customer pulled "something like a towel" over the center console onto his lap and pulled back the towel to show her part of a gun. Ortiz explained the man said he was robbing her, and she gave him all the money and change she had in her pockets. Ortiz said the man told her to go get money from inside the Sonic store but then reversed and left the location. Ortiz testified that she always looked at the vehicle registration stickers when she delivered orders and noticed this vehicle's sticker was from Tarrant County. She stated there was a single man in the vehicle, and he had a big tattoo

2

on his neck. Although unsure, she thought it was an eagle and definitely saw a "wing." Ortiz explained she was more focused on the gun, which she described as black and "not a handgun." She stated she felt threatened when the event occurred. Ortiz identified Porter as the man who robbed her at Sonic and said she was sure it was him.

Officer Jack McCarty of the Aransas Pass Police Department testified that when he was traveling to the Sonic location, he saw a light-colored vehicle speeding down the road, weaving through traffic. Officer McCarty gave a brief chase but was unable to catch the speeding vehicle or get the license plate number. He also responded to Rockport around 10:10 p.m. where Porter was later apprehended. On cross-examination, Porter asked if Rockport was in Aransas County, and Officer McCarty said yes. Porter then asked if Officer McCarty had jurisdiction in Rockport since Officer Dougherty said she did not. Officer McCarty responded that he does have jurisdiction because Aransas Pass falls into Aransas, San Patricio, and Nueces Counties.

Officer Bryan Cantu, formerly with the Rockport Police Department, testified that he located a vehicle matching the description of the vehicle involved in the Sonic robbery around 10:00 p.m. at a Rockport Valero gas station. He stated that when he approached the vehicle, he noticed the registration sticker was from Tarrant County and he saw an "AR-type rifle" in the front passenger seat and four other rifles in the back seat, all in plain view. Officer Cantu explained that Porter took off running out the back door of the Valero, and after a search involving multiple agencies, he was later found two hundred yards away in heavy brush.

Another officer from the Aransas Pass Police Department testified that during booking, he took photographs of Porter's tattoos, including a large insect resembling a bee on his neck.

Following the State's case-in-chief, Porter testified in his defense that he drove to the Aransas Pass area to meet a friend, Clifford Yell. Porter explained that he met Yell years prior when Yell trained to get a commercial driver's license. Yell was supposed to help Porter secure a job working on a shrimp boat. Porter said he lent Yell his vehicle around 5 or 6 p.m. so Yell could deliver some methamphetamine Porter had brought with him. Porter believed it was Yell who robbed the Sonic store. Porter stated Yell returned to Yell's home around 8:00 p.m. and Porter took the vehicle to meet a man named "Itchy" at the Valero about the shrimp boat job. He admitted he was supposed to give the guns found in the vehicle to Itchy for Yell and knew he was not supposed to be around guns as a felon. Porter explained that he went inside the Valero to get a drink, saw Officer Cantu looking in his vehicle, dropped his drink, and ran out the back door of the Valero because he knew he was going to get in trouble. Porter claimed he did not know anything about the robbery. Porter also admitted that he was currently on parole for an unrelated offense.

Ortiz was called as a rebuttal witness by the State and shown a picture of Yell. She stated that she had never seen Yell before and was confident that it was Porter who robbed her.

The jury found Porter guilty of both offenses as charged. Following a punishment hearing where Porter stipulated to his prior offenses, the trial court sentenced him to thirty

years' imprisonment for the aggravated robbery and twenty years' imprisonment for the unlawful possession of a firearm charge to run concurrently. *See id.* This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, Porter argues the evidence was insufficient to support his conviction for aggravated robbery and that venue was not sufficiently proven in the unlawful possession of a firearm charge.

### A. Standard of Review

In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018); *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013). "Each fact need not point directly and independently to the guilt of a defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the factfinder is the exclusive judge of the facts, the credibility

of the witnesses, and the weight to give their testimony. *Walker*, 594 S.W.3d at 335; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04.

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Metcalf v. State*, 597 S.W.3d 847, 856 (Tex. Crim. App. 2020) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *see Romano v. State*, 610 S.W.3d 30, 34 (Tex. Crim. App. 2020). "The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Walker*, 594 S.W.3d at 336.

## B.    Aggravated Robbery

A hypothetically correct jury charge would state that Porter committed aggravated robbery if: (1) in the course of committing theft of property and with intent to obtain or maintain control of that property, he intentionally or knowingly threatened Oritz or placed her in fear of imminent bodily injury; and (2) he used or exhibited a deadly weapon. TEX. PENAL CODE ANN. §§ 29.02, .03. Porter argues generally in his brief that the State lacked evidence of fingerprints, of a towel in his vehicle, that his car found in Rockport was the same vehicle from Sonic, that he had been at Sonic in Aransas Pass, or that he fit the same description given by Ortiz. Porter claims that because he testified he loaned his car to Yell, it was unreasonable to believe he committed the robbery.

However, the jury heard the testimony from all of the witnesses, including Ortiz. Ortiz testified that the man who robbed her had a large wing tattooed on his neck, and

6

even though that person had been wearing sunglasses, she positively identified Porter during trial multiple times. Ortiz stated she had no doubt that he was the man whom she served food to at Sonic, and who then showed her the barrel of a gun and demanded the money she had in her pockets. Ortiz also testified that she did not recognize Yell when shown his photograph. Moreover, the officers testified that Porter was found later that day in possession of a vehicle that matched the description from Sonic and contained multiple weapons. All this evidence, both direct and circumstantial, was sufficient to support the jury's verdict. *See Walker*, 594 S.W.3d at 335; *Nisbett*, 552 S.W.3d at 262.

## C.    Venue

### 1.    Applicable Law

Porter's first issue also challenges the evidence supporting the venue for his unlawful possession of a firearm prosecution. Porter states that venue was not proper in San Patricio County, and that he raised his challenge both in a pre-trial motion and during the punishment phase of trial. He argues that because venue was improper, his substantial rights were affected.

In order for the evidence to support a conviction, the United States Supreme Court has held that the "evidence must be adequate for a fact finder to rationally find 'the essential elements of the crime beyond a reasonable doubt.'" *Schmutz v. State*, 440 S.W.3d 29, 34 (Tex. Crim. App. 2014) (quoting *Jackson*, 443 U.S. at 319). An "element" is a fact that is legally required for a fact finder to convict a person of a substantive offense. *Id.*; *see* TEX. PENAL CODE ANN. § 1.07 (defining "element of offense" to include conduct, result, culpability elements, as well as "negation of any exception."). The Texas Court of

Criminal Appeals has held that because it is not a "criminative fact," venue is not an "element of the offense." *Schmutz*, 440 S.W.3d at 34 (quoting *Boyle v. State*, 820 S.W.2d 122, 140 (Tex. Crim. App. 1989), *overruled on other grounds by Gordon v. State*, 801 S.W.2d 899 (Tex. Crim. App. 1990)). Although venue must be proven "at trial to establish a defendant's [legal] status," that "does not convert" venue into an "element[ ] of the proscribed offense[ ]." *State v. Mason*, 980 S.W.2d 635, 641 (Tex. Crim. App. 1998) (explaining that venue and jurisdiction are separate from the elements of the offense).

To establish venue, the State has the burden to prove, by a preponderance of the evidence, that the county of prosecution is where the offense was committed. TEX. CODE CRIM. PROC. ANN. art. 13.17. Venue may be proved by circumstantial as well as direct evidence. *Rippee v. State*, 384 S.W.2d 717, 718 (Tex. Crim. App. 1964). The trier of fact may make reasonable inferences from the evidence to decide the issue of venue. *Dewalt v. State*, 307 S.W.3d 437, 457 (Tex. App.—Austin 2010, pet. ref'd); *Thompson v. State*, 244 S.W.3d 357, 362 (Tex. App.—Tyler 2006, pet. dism'd). In reviewing venue, we view all the evidence in the light most favorable to an affirmative venue finding and determine whether a rational trier of fact could have found by a preponderance of the evidence that venue was proper. *Dewalt*, 307 S.W.3d at 457; *Gabriel v. State*, 290 S.W.3d 426, 435 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see* TEX. CODE CRIM. PROC. ANN. art. 13.17.

### 2. Facts

Venue was discussed throughout the trial. Prior to the commencement of trial, Porter filed a motion to dismiss stating that:

1. The Court lacks jurisdiction of this case.

2. COUNT TWO should be dismissed if the State's only evidence arises from the investigative work by the Aransas County Sheriff's Office and Rockport Police Department, who found the weapons in Aransas County, Texas on the corner of Market St. and Hwy. 35. The venue for this offense is Aransas County, Texas and not San Patricio County, Texas. The San Patricio County District Attorney has no jurisdiction to prosecute this case.

3. COUNT THREE should be dismissed as there is no DPS lab analysis presented to defendant's counsel and the drugs, in plain view, were found in Aransas County, Texas under the same circumstances of Count Two.

At some point after the jury was selected, the State abandoned Count Three without prejudice stating: "The offense charged in Count 3 of the State's indictment is a Possession of a Controlled Substance that is awaiting additional laboratory analysis therefore, the State elects to abandon Count Three and proceed to trial on Counts One and Two of the indictment."

In the State's opening, the prosecutor described what he believed the evidence would show:

They arrest [Porter]. They talk to him. They Mirandize him there at the scene, and he admits that the vehicle that he was there in, the vehicle that was described used in the robbery, he rented. In the vehicle, they find an AR-15 which happens to be long and it has a barrel that could be described as having holes in it, among other weapons. So he's charged with the offense of felon in possession of a firearm because he also admits that he's a felon . . . .

Porter responded in opening by arguing:

Now, [Porter] knows that he was not supposed to have possession of those weapons. [Porter] said they are not his weapons. They were [Yell's] weapons, but they were in his car. He did have possession of the rental car, so that—that's why there was a chase that ensued. Basically, I think this is an Aransas County case because that's where the weapons were found[,]

9

and that's where the arrest was made for that and the Judge has my motion and he will make a decision on that. But, in any event, that's what we are alleging in this case.

Several witnesses in the trial stated that the guns were found when Porter was arrested in Rockport, which is in Aransas County. However, Ortiz stated that she saw a gun in the vehicle at the Sonic in Aransas Pass when she was robbed. During closing arguments, the State said:

> Now, as to the charged offense, there's two. One of them is pretty-much cut and dry, unlawful possession of a firearm by a felon. It basically, says that if you possess—you're a felon and you possess a firearm prior to the fifth anniversary of release from parole or if you're a felon that got probation, probation. In this particular case, by [Porter's] own admission, he's currently on parole right now. So, basically, he's not supposed to have a firearm. And as far as what a firearm is, well, you had several officers testify that they removed firearms from the vehicle being driven by [Porter]. And so there's no question it was a firearm and there's no question he's not allowed to have it.
>
> . . . .
>
> When someone says 'rifle,' they mean one thing. When someone says 'gun,' it can mean another thing entirely, a pistol, that kind of thing, but, you know, [Ortiz] said she didn't know. She called it a gun, a big long gun that had a barrel with holes in it, and if you look at what's around this barrel, you see the holes that she was referring to and there was determined—she—they—she was talking about an AR-type weapon which was found in the vehicle that [Porter] was driving. As a matter of fact, if you remember, [Officer Cantu], the Rockport officer that came across the vehicle, he said that that particular AR-14 (sic) was in the front seat between the console, talked about how it was. Basically, when—when [Ortiz] said she came up to the vehicle, that's where he pulled the weapon from. First she said it was covered with a towel and she couldn't see it. Then he pulls the towel off because he wanted her to see it and he pointed it in her direction because he wanted to put her in fear.

During the punishment hearing, Porter re-urged his motion to dismiss the unlawful possession of a firearm charge by stating:

I still reurge my Motion to Set Aside, to Dismiss Count Two. I don't think this county has venue and I don't think the D.A. has jurisdiction to prosecute it . . . .

The trial court denied the motion to dismiss, stating:

[Porter] having been found guilty of the aggravated robbery, aggravated because of the use or exhibition of a firearm in San Patricio County, I'm going to find supports the jury's finding regarding possession of a firearm in San Patricio County, as well as where the weapons were ultimately seized in Aransas County.

### 3.     Discussion

Although the State in its closing argument discussed both Porter's arrest in Aransas County and the facts that surrounded the aggravated robbery in San Patricio County, the jury could have reasonably found that Porter was guilty of the unlawful possession of a firearm charge based on Ortiz's testimony. The elements of unlawful possession of a firearm are: (1) Porter has been convicted of a felony and (2) he possessed a firearm; (3) after conviction and before the fifth anniversary of his release from confinement. TEX. PENAL CODE ANN. § 46.04. Ortiz testified that she was positive that Porter was the man who showed her a firearm at Sonic while requesting the money she had on her person.

It was established, and Porter does not dispute, that Sonic was located in San Patricio County. *See Dewalt*, 307 S.w.3d at 457. It was also established that Porter was the person identified from the Sonic and Ortiz stated he was in possession of a firearm. *See id.* Porter stated he was on parole from a felony offense at that time. Therefore, a rational trier of fact could have concluded by a preponderance of the evidence that venue was proper. *See id.* We overrule Porter's first issue.

11

### III.    INEFFECTIVE ASSISTANCE OF COUNSEL

By his second issue, Porter alleges his trial counsel was ineffective for failing to move for a directed verdict on the aggravated robbery charge due to the evidence being insufficient. He claims the State failed to "demonstrate a vital element of the offense, that [Porter] was actually the individual who robbed the victim at gunpoint at the Sonic."

To prevail on a claim of ineffective assistance of counsel, Porter must prove by a preponderance of the evidence that: (1) counsel's performance fell below the standard of reasonableness under prevailing professional norms; and (2) there is a reasonable probability that, taking into account the totality of the evidence before the judge or jury, the appellant was prejudiced by counsel's actions or inactions. *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018) (citing *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985) and *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

"Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Johnson v. State*, 624 S.W.3d 579, 585 (Tex. Crim. App. 2021). "It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. Rather, the record must affirmatively demonstrate trial counsel's alleged ineffectiveness." *Id.*; *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). The appellant must overcome "the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance" and that the conduct could be seen as sound trial strategy. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). For the appellant to defeat this presumption, "[a]ny allegation of ineffectiveness must be firmly founded in the record

12

and the record must affirmatively demonstrate the alleged ineffectiveness." *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996), *abrogated by Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998).

Trial counsel should generally be given an opportunity to explain her actions before being found ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). In the face of an undeveloped record, counsel should be found ineffective only if her conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). A silent record that provides no explanation for counsel's actions will overcome the strong presumption of reasonable assistance. *Rylander*, 101 S.W.3d at 110–11; *Thompson*, 9 S.W.3d at 814. "Thus, if the record does not contain affirmative evidence of trial counsel's reasoning or strategy, we presume counsel's performance was not deficient." *Johnson*, 624 S.W.3d at 586; *see Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002).

In this case, there was no motion for new trial filed so there was no hearing regarding any claims of ineffective assistance. The notice of appeal was general, and Porter just requested to appeal his convictions and appoint a new attorney for the appeal process. Therefore, the record is silent, and courts "may not find deficient performance from a silent record if there is any reasonable strategy that might support counsel's decision." *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013). "Counsel gets the benefit of the doubt from a silent record, and courts must assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Johnson*, 624 S.W.3d at 586; *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

13

Because we do not know what trial counsel's strategy was regarding not requesting the directed verdict, we decline to find that Porter has met the first prong of *Strickland*. *Miller*, 548 S.W.3d at 499. Additionally, this Court found the evidence was sufficient to support the jury's verdict on the aggravated robbery count. Accordingly, Porter cannot meet the second *Strickland* prong. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (holding that to prevail on his claim of ineffective assistance for failure to file a motion, appellant was obliged to prove that the motion would have been granted). We overrule Porter's second issue.

## IV.    CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
26th day of August, 2021.

14